El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
El caso ante nuestra consideración nos brinda la opor-tunidad de expresarnos con relación a un asunto de gran importancia e interés, tanto para los miembros de la pro-fesión de la abogacía como para la comunidad en general. Debemos resolver si una determinación del Tribunal de Primera Instancia sobre la descalificación de un abogado la podría revisar de forma interlocutoria el Tribunal de Ape-laciones mediante un recurso de certiorari. En específico, debemos dilucidar si las órdenes de descalificación están contenidas entre las excepciones que confieren jurisdicción al Tribunal de Apelaciones para revisar órdenes o resolu-ciones interlocutorias según la Regla 52.1 de Procedi-miento Civil de 2009 (32 L.P.R.A. Ap. V).
I
El origen del caso ante nos surge de una controversia sobre un alegado incumplimiento de contrato y cobro de dinero. El 7 de abril de 2007, la compañía Job Connection Center, Inc. (Job Connection) presentó una demanda en contra de Supermercados Econo, Inc. (Econo). Alegó que mediante el contrato realizado entre Econo y Job Connection, esta última se obligó a adiestrar personal y asistir en la implantación de un programa federal de subsidios de salarios. Argüyó que, en conformidad con el anterior con-trato, el peticionario le adeudaba $161,208.97 por servicios prestados, mora e intereses legales, ya que se comprometió a desembolsar cualquier gasto relacionado a la capacita-ción de los empleados, según se describía en una propuesta entre Econo y el Departamento de la Familia.
Econo presentó su contestación a la demanda, una reconvención y una demanda contra tercero en contra del *589 Departamento de la Familia. ([1]) El bufete de abogados Muñoz, Boneta, Benitez, Peral & Brugueras (Munet Law) compareció en representación de Econo en este litigio.
Luego de varios trámites procesales, el 15 de octubre de 2008, Job Connection presentó una Moción en solicitud de descalificación de abogados, y paralización de los procedi-mientos. Sostuvo que procedía descalificar al bufete Munet Law porque existía un conflicto de intereses entre Econo y uno de los socios del bufete, el Ledo. Rogelio Muñoz Vissepó, y que este conflicto era imputable a todo el bufete. Job Connection argüyó que el licenciado Muñoz Vissepó no podía representar con lealtad los intereses de Econo, ya que era socio de Munet Law y, a su vez, miembro de la Junta de Directores de Econo. Sostuvo que esta situación configuraba una violación al Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual prohíbe que un abo-gado represente a una parte cuando su juicio profesional se pueda afectar por sus intereses personales.
La solicitud de descalificación que Job Connection pre-sentó también estuvo basada en que se proponía tomarle una deposición al licenciado Muñoz Vissepó y que por ello se convertiría en testigo. Argüyó que esto configuraba una violación al Canon 22 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual prohíbe que un abogado sea testigo en el mismo caso en el que comparece como representante legal de una parte. Así también, sostuvo que no ordenar la descalificación podría afectar el descubrimiento de prueba. Por último, Job Connection señaló que existía una posible violación al Canon 38, según el cual un abogado tiene que evitar hasta la apariencia de conducta impropia. 4 L.P.R.A. Ap. IX. En síntesis, Job Connection alegó que los citados Cánones 21, 22 y 38 del Código de Ética Profesional le *590 impedían a Munet Law ejercer la representación legal de Econo. Además, solicitó la paralización de los procedimien-tos judiciales hasta que se dilucidara la moción.
El 21 de noviembre de 2008, Econo presentó una Oposi-ción a moción en solicitud de orden, réplica a moción en oposición a presentación de reconvención y oposición a mo-ción de descalificación. Alegó que el bufete Munet Law se compone de dieciséis abogados, uno de los cuales es el li-cenciado Muñoz Vissepó, quien sostiene una práctica ex-clusivamente corporativa, que nunca ha comparecido en el caso de epígrafe y que solo ha sido partícipe de informes periódicos. Expresó que, sin embargo, el licenciado Muñoz Vissepó estaría disponible para cualquier asunto que re-quiera el demandante, siempre que el derecho procesal civil y el derecho probatorio lo permitan. Econo alegó que Job Connection carecía de legitimación activa para plan-tear la descalificación, ya que no demostró que le causaría un perjuicio o una desventaja indebida en el caso. Además, sostuvo que la Moción en solicitud de descalificación de abogados solo pretendía dilatar los procedimientos y pri-var a Econo de su representación legal.
El 21 de enero de 2009, Econo presentó una moción en la cual solicitó una orden protectora relacionada a la anun-ciada deposición. Alegó que no existía justificación para la solicitud de toma de deposición. Job Connection presentó una moción en cumplimiento de orden el 6 de febrero de 2009 en la cual se opuso a la Solicitud de orden protectora presentada por Econo. Reiteró su postura acerca de la im-posibilidad de que Munet Law y el licenciado Muñoz Vis-sepó continuaran representando legalmente a Econo de-bido al alegado conflicto de intereses que había entre Econo y su representante. Además, expresó que el licen-ciado Muñoz Vissepó sería depuesto por su conocimiento sobre hechos en controversia. Ese mismo día, Job Connection notificó la toma de una deposición al licenciado Muñoz Vissepó.
*591 Econo presentó una réplica a la moción en cumplimiento de orden, en la cual expresó que era necesario analizar la capacidad de la intervención del licenciado Muñoz Vissepó para poder discernir si Job Connection tenía derecho o no a la deposición solicitada. Argüyó que se debía determinar si la información que se buscaba descubrir podría obtenerse de otras personas o medios menos onerosos y complejos, de acuerdo con lo resuelto en Ades v. Zalman, 115 D.P.R. 514, 524 (1984). Esto, debido a que la intervención y participación del licenciado Muñoz Vissepó en las reuniones de la Junta de Directores de Econo había sido en carácter de abogado-director, y que la información la podían suminis-trar las personas que participaron en la negociación de am-bos contratos. Además, sostuvo que no procedía la solicitud de descalificación, y solicitó que el tribunal dictara “no ha lugar” a la petición de deposición presentada por la parte recurrida y que concediera la orden protectora solicitada. Argüyó que no existe incompatibilidad de funciones entre ser abogado de una corporación y servir de director externo de su Junta de Directores.
Según surge del expediente, el 3 de abril de 2009, el Tribunal de Primera Instancia celebró una vista sobre el estado de los procedimientos. En ésta, Job Connection rei-teró su solicitud de descalificación. El foro primario le con-cedió un término a Econo para que presentara su posición. Econo cumplió con lo ordenado mediante una moción en la cual reiteró su solicitud de orden protectora y su petición de que el tribunal declarara “no ha lugar” la descalificación solicitada. Se anejó a la Moción en cumplimiento de orden una declaración jurada en la cual el licenciado Muñoz Vis-sepó expresó que su participación en la Junta de Directo-res de la empresa era como director externo y como abo-gado de la empresa. Declaró, además, que su función consistía en asesorar y que no era accionista ni poseía par-ticipación o interés propietario en la corporación de Econo.
*592 El Tribunal de Primera Instancia notificó una resolu-ción el 7 de octubre de 2010 en la cual declaró “ha lugar” la moción de descalificación que presentó Job Connection. En consecuencia, ordenó la descalificación del licenciado Mu-ñoz Vissepó y Munet Law como representantes legales de Econo en el litigio. El foro primario basó su dictamen en que, al licenciado Muñoz Vissepó ser un potencial testigo y pertenecer al bufete que representa a Econo, podría afectar el descubrimiento de prueba y dar la apariencia de con-ducta impropia.
Inconforme, el 8 de noviembre de 2010 Econo presentó un recurso de certiorari ante el Tribunal de Apelaciones. En éste señaló que el Tribunal de Primera Instancia erró al descalificar al licenciado Muñoz Vissepó y al bufete Munet Law. Por su parte, Job Connection se opuso a la expedición del recurso mediante una moción. Argüyó que las mociones de descalificación no se encuentran entre las excepciones que la Regla 52.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, confiere para que el Tribunal de Apelaciones revise deter-minaciones interlocutorias del Tribunal de Primera Instancia.
El 23 de junio de 2011, el Tribunal de Apelaciones de-negó el recurso de certiorari. Concluyó que una moción de descalificación no está comprendida dentro de los escena-rios que confieren jurisdicción al Tribunal de Apelaciones para revisar órdenes y resoluciones interlocutorias según la Regla 52.1 de Procedimiento Civil, supra. Además, sos-tuvo que de todas formas hubiese denegado el recurso. Esto por considerar que los tribunales de instancia están en mejor posición para determinar cuál debe ser el manejo de los casos de descalificación de abogados.
Luego de varios trámites procesales, el 12 de septiembre de 2011, Econo acudió ante nos mediante un recurso de certiorari. Nos solicita que revoquemos la resolución recu-rrida y que nos expresemos acerca de la jurisdicción del *593 Tribunal de Apelaciones al amparo de la Regla 52.1 de Pro-cedimiento Civil, supra, para revisar interlocutoriamente las determinaciones del Tribunal de Primera Instancia en cuanto a una solicitud de descalificación de abogado. Pre-sentó, además, una moción en auxilio de jurisdicción el 13 de septiembre de 2011 en la cual nos solicitó que paralizá-ramos los procedimientos mientras se revisaba la resolu-ción dictada por el Tribunal de Apelaciones.
El 19 de septiembre de 2011, emitimos una resolución mediante la cual paralizamos los procedimientos y expedi-mos el auto de certiorari. El 9 de diciembre de 2011, le concedimos un término a Job Connection para que presen-tara su alegato. Con la comparecencia de ambas partes, estamos en posición de resolver.
II
 A. De acuerdo con las derogadas Reglas de Pro-cedimiento Civil de 1979, el Tribunal de Apelaciones podía atender mediante certiorari todas las determinaciones in-terlocutorias del Tribunal de Primera Instancia. ([2]) Al apro-barse las nuevas Reglas de Procedimiento Civil de 2009, se dispuso en la Regla 52.1 una prohibición general a que el Tribunal de Apelaciones revisara mediante auto de certio-rari las resoluciones u órdenes interlocutorias. La propia regla estableció las circunstancias excepcionales en las que el foro apelativo intermedio tendría jurisdicción para aten-der mediante recurso de certiorari determinaciones inter-locutorias del Tribunal de Primera Instancia. Las excepcio-nes dispuestas en la referida regla fueron las siguientes: cuando se recurriera de una resolución u orden al amparo de las reglas sobre remedios provisionales e injuctions, Re-glas 56 y 57 de Procedimiento Civil de 2009 (32 L.P.R.A. *594 Ap. V), o de la denegatoria de una moción de carácter dispositivo.
Además, la mencionada Regla 52.1 dispuso una lista de situaciones en las cuales el Tribunal de Apelaciones puede revisar órdenes o resoluciones interlocutorias como excepción. Esta lista taxativa estableció como excepciones las siguientes circunstancias: cuando se recurra de decisio-nes sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía y en casos de relaciones de familia.!([3])
De esta manera, se limitó la revisión de resoluciones y órdenes interlocutorias. Este cambio fue el resultado, principalmente, del gran cúmulo de recursos para revisar órdenes y resoluciones que dilataban innecesariamente el proceso. Éstas se podrían revisar una vez culminado el asunto en instancia, uniendo esa revisión al recurso de apelación. Las enmiendas a la regla se realizaron para agi-lizar los procedimientos y evitar que se paralizaran los ca-sos por tiempo considerable innecesariamente. Informe de la Comisión de lo Jurídico Civil del Senado de Puerto Rico sobre P. de la C. 2991, 11 de noviembre de 2010, pág. 2. Estas limitaciones buscaron “restaurarle al certiorari su característica de remedio extraordinario y especial ...”. J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., Pubs. J.T.S., 2011, T. IV, pág. 1503.
Sin embargo, la regla no vislumbraba la posibilidad de que en situaciones excepcionales se permitiese la intervención interlocutoria del foro apelativo intermedio. Para disponer acerca de la revisión en estas situaciones excepcionales, la Ley Núm. 177-2010 enmendó la referida Regla 52.1 para permitir que el Tribunal de Apelaciones pueda atender, mediante certiorari, determinaciones inter- *595 locutorias del Tribunal de Primera Instancia en casos que estén revestidos de interés público o en situaciones en que esperar a la apelación constituiría un fracaso irremediable de la justicia. Así, la Regla 52.1 de Procedimiento Civil de 2009, según enmendada, dispone lo siguiente:
Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resolu-ciones se tramitará de acuerdo con la ley aplicable, estas re-glas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de tes-tigos de hechos o peritos esenciales, asuntos relativos a privi-legios evidencíanos, anotaciones de rebeldía, en casos de rela-ciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación cons-tituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. (Enfasis suplido). 32 L.P.R.A. Ap. V.
La enmienda a la Regla 52.1 permite que, aun mante-niendo su propósito original, se logre acceso a una revisión en situaciones que lo ameriten, ya sea debido a situaciones que conllevan un interés público apremiante o en las cua-les el esperar a la posible interposición de una apelación podría conllevar un fracaso irremediable de la justicia. De esta forma se asegura la disponibilidad del recurso cuando existen situaciones meritorias.
B. La Regla 9.3 de Procedimiento Civil, 32 *596 L.P.R.A. Ap. V, establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los miem-bros de la profesión legal que postulan ante sí, puede des-calificar a un abogado que incurra en conducta que consti-tuya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. Así, el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos. Meléndez v. Caribbean Int’l. News, 151 D.P.R. 649, 661 (2000).
Una orden de descalificación puede proceder, ya sea para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito. Meléndez v. Caribbean Int’l. News, supra, pág. 661. Ello no menoscaba el poder inherente de esta Curia para ejercer la facultad de disciplinar a los miembros de la clase togada, íd. Esto es así, ya que los procedimientos de descalificación no constituyen acciones disciplinarias de por sí. K-Mart Corp. v. Walgreens of P.R., Inc., 121 D.P.R. 633, 638 (1988). Sin embargo, en muchas ocasiones las descalificaciones funcionan como una medida para evitar posibles violaciones a los cánones del Código de Ética Profesional. íd., pág. 637. Ahora bien, si los mismos hechos por los cuales se ordena la descalificación pueden ser suficientes para disciplinar éticamente al abogado, entonces la acción disciplinaria procedería.
En los procedimientos disciplinarios por violación a los cánones del Código de Ética Profesional, el abogado se expone a una sanción o penalidad. Aunque en el caso de una descalificación no se expone a esto, la realidad es que la descalificación de un abogado afecta negativamente varios aspectos, tales como los derechos de las partes y el trámite de los procedimientos. En consideración a lo ante *597 rior, una descalificación es un remedio que no se debe im-poner ligeramente. Esta solo debe proceder cuando sea es-trictamente necesario, por considerarse un remedio drástico que se debe evitar si existen medidas menos one-rosas que aseguren la integridad del proceso judicial y el trato justo a las partes. El tribunal deberá realizar un balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial.
Una descalificación puede ser ordenada por el tribunal motu proprio, o a solicitud de una parte. Meléndez v. Caribbean Int’l. News, supra, pág. 661; K-Mart Corp. v. Walgreens of P.R., Inc., supra. Cuando es el tribunal el que dicta motu proprio la descalificación, no es necesario que aporte prueba sobre una violación ética, ya que la apariencia de impropiedad se podrá utilizar, en caso de duda, a favor de la descalificación. Meléndez v. Caribbean Int’l. News, supra, pág. 661; Liquilux Gas Corp. v. Berrios, Zaragoza, 138 D.P.R. 850, 864 (1995); In re Carreras Roviray Suárez Zayas, 115 D.P.R. 778, 792 (1984). Tampoco se requiere aportar prueba de una violación ética cuando la descalificación responde a la necesidad que tiene un juez de agilizar el trámite de un pleito. Meléndez v. Caribbean Int’l. News, supra. En cambio, cuando es una parte quien solicita la descalificación de un representante legal, la mera presentación de una moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión. El tribunal deberá hacer un análisis de la totalidad de las circunstancias de acuerdo con los siguientes factores: (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el expertise de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y econó- *598 mica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. Otaño v. Vélez, 141 D.P.R. 820, 828 (1996) (per curiam); Liquilux Gas Corp. v. Berrios, Zaragoza, supra, pág. 865.([4]) Respecto a este último requisito, este Tribunal ha expresado que un juez puede denegar una solicitud de descalificación presentada por una parte adversa cuando entienda que ésta se ha interpuesto como una táctica dilatoria del procedimiento. Meléndez v. Caribbean Int’l. News, supra, pág. 661. Otra situación en la cual la solicitud es considerada frívola y debe ser denegada es cuando se presenta con el propósito de intimidar al adversario. M.A. Velázquez Rivera, Procedimiento Civil, 67 (Núm. 4) Rev. Jur. U.P.R. 775, 779 (1998).
El juez que atiende una moción de descalificación debe analizar si la continuación de la representación legal le causaría un peijuicio o una desventaja indebida en el caso a quien la solicita. Antes de determinar si procede la descalificación requerida, el tribunal le deberá brindar la oportunidad al representante legal, cuya descalificación se solicita, para que se exprese. A esos efectos, en Otaño v. Vélez, supra, resolvimos que cuando una parte adversa interpone una moción de descalificación, el abogado contra el cual se presenta esta moción tiene derecho a ser oído y a presentar prueba en su defensa, antes de que el tribunal resuelva la solicitud. Este derecho cumple con las exigencias del debido proceso de ley. Meléndez v. Caribbean Int’l. News, supra, pág. 670. En los casos en los cuales el tribunal ordena motu proprio la descalificación, la extensión de *599 este derecho a ser oído se cumple al darle la oportunidad al abogado de reaccionar cuando el juez manifiesta las razo-nes por las que procedería la descalificación. Id.
El reconocimiento de este derecho demuestra la impor-tancia que tiene un proceso de descalificación para un abogado. Debido a las repercusiones que puede conllevar una descalificación, los abogados deben tener la oportuni-dad, según las exigencias del debido proceso de ley, de de-mostrar la posible improcedencia de ésta.
III
Luego de haber enunciado la naturaleza, los propósitos y la procedencia de las determinaciones acerca de las des-calificaciones de abogados, estamos en posición de decidir si las órdenes de descalificación emitidas por el foro prima-rio son revisables de forma interlocutoria mediante recurso de certiorari.
Los dictámenes en los cuales se ordena la descalifica-ción de un abogado conllevan repercusiones que tienen el efecto potencial de afectar los derechos de las partes y el trámite de los procedimientos. La naturaleza de las solici-tudes y órdenes de descalificación hace necesaria que en su determinación se salvaguarden los derechos de todas las partes, a la vez que se realice conforme con la Regla 1 de Procedimiento Civil “de modo que faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanti-cen una solución justa, rápida y económica de todo procedimiento”. 32 L.P.R.A. Ap. V.
Cuando se ordena una descalificación, la parte cuyo abogado es descalificado debe buscar una nueva representación legal para continuar con los procedimientos. El efecto de esto es un retraso en la ventilación del caso y en muchas ocasiones representa una carga económica mayor por los desembolsos adicionales de dinero. Además, una descalificación priva a la parte cuya representación legal *600 fue descalificada de ser representada por el miembro de la clase togada de su elección, afectando así su derecho a la libre selección de abogado. Wolfram, Modern Legal Ethics, Minnesota, West Publishing Co., 1986, Sec. 7.1.3, pág. 318. Aunque en casos civiles el derecho a la libre selección de representación legal no es un derecho fundamental, sí es un derecho que no debe ser afectado si no existe real justificación para ello. Véanse: Meléndez v. Caribbean Int’l. News, supra; Otañ o v. Vélez, supra; Sánchez Acevedo v. E.L.A., 125 D.P.R. 432, 438 (1990); In re Vélez, 103 D.P.R. 590, 599 (1975) (per curiam).([5]) A su vez, los procedimien-tos y resultados del pleito podrían ser afectados. Un abogado que lleve un tiempo considerable trabajando en un caso se ha preparado para el mismo y tiene un conocimiento sobre éste. El remplazar al representante legal podría tener un efecto perjudicial en la forma en que se maneje el caso.
Por otra parte, es importante considerar los derechos del representante legal que ha sido descalificado. La pros-cripción de permanecer como representante legal conlleva, en muchas ocasiones, consecuencias nefastas para la pro-fesión y la buena reputación del representante legal o bu-fete descalificado. Aunque, como mencionamos, la descali-ficación de un representante legal no constituye una acción disciplinaria, las mociones de descalificación en los procedimientos judiciales conllevan algunas consecuencias similares a la de los procedimientos disciplinarios. Véase Wolfram, op. cit., pág. 331 esc. 4. Por esta razón, si la descalificación es improcedente, el representante legal y, más importante aun, la parte afectada, debe contar con el *601 derecho de revisarla y no tener que quedarse atado de bra-zos y desprovisto de una revisión.
Las situaciones anteriores se agravan al tener presente que el no reconocerle el derecho a revisar interlocutoria-mente las resoluciones acerca de descalificaciones podría conllevar el pernicioso efecto de que éstas nunca se puedan revisar. La apelación en estos casos es un remedio infruc-tuoso e, incluso, quimérico. Basta con considerar el ejemplo de una parte que, luego de que el abogado o bufete que lo representaba fue descalificado, consigue una nueva repre-sentación legal y logra una decisión favorable en su caso. Esta parte no tendrá interés de presentar un recurso de apelación, lo que conllevaría el efecto real de que la desca-lificación se convirtió en inapelable, aun cuando se retrasó la solución del caso y el trámite resultó encarecido. Por su parte, el abogado descalificado no puede esperar por una apelación para plantear como error su descalificación pues ya no estará involucrado en el litigio al momento de la apelación.
No hay duda que la mencionada situación conllevaría un daño irreparable para el abogado cuya descalificación era improcedente en derecho y quien no tuvo la oportuni-dad de recurrir a una revisión de esta determinación. El no permitir una revisión interlocutoria menoscaba el derecho de ese abogado a prestar servicios remunerados en un caso y podría ocasionar un fracaso de la justicia, ya que no será revisable.
Analizadas las repercusiones que pudiera ocasionar no reconocer el derecho de una parte a revisar las órdenes de descalificaciones, resolvemos que éstas son revisables de acuerdo con la citada Regla 52.1 de Procedimiento Civil de 2009, ya que “esperar a una apelación constituiría un fracaso irremediable a la justicia”.
En el caso de autos, el Tribunal de Apelaciones deter-minó que carecía de jurisdicción para atender el recurso de certiorari porque concluyó que las mociones de descalifica- *602 ción no se encuentran contenidas en las excepciones que la Regla 52.1 establecen para atender estos recursos. Al así proceder, el foro apelativo intermedio erró. El Tribunal de Apelaciones tenía jurisdicción para revisar la descalifica-ción ordenada por el Tribunal de Primera Instancia me-diante la cual dicho foro descalificó al licenciado Muñoz Vissepó y al bufete Munet Law como representantes lega-les de Econo en el caso de epígrafe, conforme a la Regla 52.1 de Procedimiento Civil, supra.
Por otra parte, el foro apelativo intermedio expresó que hubiera denegado de igual forma el recurso por considerar que el foro primario está en mejor posición para determi-nar la descalificación de abogados. Erró del mismo modo al así razonar.
Es cierto que hemos expresado que la determinación de derecho del tribunal de instancia de descalificar a un abogado es una decisión impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. Meléndez v. Caribbean Int’l. News, supra, pág. 664. Véanse, además: Lluch v. España Service Sta., 117 D.P.R. 729, 745 (1986); Valencia, Ex parte, 116 D.P.R. 909, 913 (1986). Sin embargo, dicha discreción no es óbice para que los foros apelativos revisen estas determinaciones debido a las consecuencias reales que pueden tener las mismas. Los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación si se demuestra que hubo un craso abuso de discreción, que el foro primario actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial. Zorniak Air Servs. v. Cessna Aircraft Co., 132 D.P.R. 170, 181 (1992); Lluch v. España Service Sta., supra.
Recordemos que cuando un tribunal carece de jurisdic-ción para atender un recurso solo procede su desesti-mación. No obstante lo anterior, y ante las expresiones del *603 foro apelativo intermedio, debemos recalcar que la función revisora no se limita a determinar cuál foro está en mejor posición para determinar una u otra cosa. Ello constituye una norma de deferencia que no releva al foro apelativo de su función de evaluar el curso decisorio llevado a cabo con-forme a lo aquí expresado.
IV
Por los fundamentos antes expuestos, revocamos la re-solución emitida por el Tribunal de Apelaciones. Por haber errado al declararse sin jurisdicción, devolvemos el caso al mencionado foro para la continuación de los procedimien-tos de acuerdo con lo antes expuesto.

Se dictará sentencia de conformidad.

(1) Alegó que debido al incumplimiento contractual de Job Connection Center, Inc. no había recibido del Departamento de la Familia el rembolso de los salarios que Econo había pagado a los empleados según el plan de subsidios.

([2]) Regla 52.1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).

(3) Estas excepciones fueron incluidas durante el trámite legislativo para resal-tar otras circunstancias en las cuales está disponible el recurso de certiorari.

(4) El juez debe analizar si una moción de descalificación se utiliza como una táctica dilatoria. C.W. Wolfram, Modern Legal Ethics, Minnesota, West Publishing Co., 1986, Sec. 7.1.3, págs. 316-317. Wolfram señala que existe una incidencia de casos en los que las partes utilizan la descalificación como un método dilatorio o un mecanismo para ganar ventaja. Según el autor, a mediados de la década del setenta hubo un crecimiento exponencial en el número de mociones de descalificación que se presentaban en los estados. Id., pág. 336. Muchas de estas mociones se presentaban para afectar al oponente y privarle de los servicios de un abogado conocido por su buena labor, y no para proteger los intereses de confidencialidad o lealtad.

(5) En el caso de los procedimientos penales, el derecho a tener representación legal se ha consagrado como parte fundamental de la cláusula del debido proceso de ley. Emda. VII, Const. EE. UU., L.P.R.A., Tomo 1; Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Véanse: Gideon v. Wainwright, 372 U.S. 335 (1963); Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 609 (1993); Pueblo v. Moreno González, 115 D.P.R. 298, 305 (1984); Pueblo v. Gordon, 113 D.P.R. 106, 108 (1982).