EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Julissa Rivera Pérez<br>(TS-18,029) | 2022 TSPR 19<br><br>208 DPR \_\_\_\_ |

Número del Caso: AB-2019-174


Fecha: 15 de febrero de 2022


Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila de Jesús
    Director


Oficina del Procurador General:

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

    Lcda. Noemí Rivera de León
    Procuradora General Auxiliar


 Abogados de la Promovida:

    Lcdo. Guillermo Figueroa Prieto
    Lcda. Margarita Mercado Echegaray


Materia: Conducta Profesional - Suspensión inmediata del ejercicio de la notaría por el término de tres meses por incumplir con los Arts. 2, 14, y 15(f) de la Ley Notarial de Puerto Rico, así como los Cánones 18, 35 y 38 del Código de Ética Profesional. La suspensión será efectiva el 15 de febrero 2022, fecha en que se le notificó a la abogada de su suspensión inmediata de la notaría.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Julissa Rivera Pérez            AB-2019-174      Queja
    (TS-18,029)

*PER CURIAM*

En San Juan, Puerto Rico, a 15 de febrero de 2022.

Nuevamente este Tribunal se ve obligado a ejercer su facultad disciplinaria contra una notaria por incumplir con los artículos 2, 14 y 15(f) de la Ley Notarial, 4 LPRA secs. 2002, 2032-2033, así como los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. En virtud de ello, suspendemos por tres (3) meses a la Lcda. Julissa Rivera Pérez ("licenciada Rivera Pérez" o la "notaria") del ejercicio de la notaría. A continuación, exponemos los antecedentes fácticos que dieron génesis a la queja.

I

La licenciada Rivera Pérez fue admitida al ejercicio de la abogacía el 17 de agosto de 2010 y a

la práctica de la notaría el 16 de diciembre del mismo año. El proceso disciplinario que nos ocupa surgió como consecuencia de una queja que el Sr. Mitchel Santana ("señor Santana") presentó el 21 de agosto de 2019 en contra de la notaria y de la Lcda. Wilma Rodríguez Santos ("licenciada Rodríguez Santos").[1] En esta Opinión *Per Curiam* atenderemos exclusivamente las alegaciones en contra de la licenciada Rivera Pérez en su carácter notarial.

El señor Santana alegó que el 23 de agosto de 2013 otorgó la Escritura Núm. 2 sobre Compraventa ("Escritura Núm. 2 de 2013") ante la licenciada Rivera Pérez en virtud de la cual adquirió un inmueble. Relató que en dicha escritura la licenciada Rivera Pérez expresó que el vendedor y dueño del inmueble, el Sr. Hiram Francisco Rodríguez Robles ("señor Rodríguez Robles"), adquirió la propiedad mediante un procedimiento judicial de cobro de dinero y de venta judicial.[2] Además, que al momento de otorgarse la escritura, la propiedad se encontraba libre de cargas y gravámenes.

---

[1] El 14 de febrero de 2022 emitimos una *Resolución* en la que amonestamos a la licenciada Rodríguez Santos por infringir los cánones 35 y 38 del Código de Ética Profesional por la conducta que motivó la queja. Se le apercibió que en el futuro debe cumplir con las responsabilidades éticas de la profesión y se ordenó el archivo de la queja en cuanto a esta.

[2] Dicho procedimiento se celebró el 7 de mayo de 2007 en el Tribunal de Primer Instancia, región judicial de Caguas, *Hiram F. Rodríguez Robles v. Nelson E. Ramos Díaz*, Caso Núm. E CD2005-1821. El 15 de noviembre de 2012, el alguacil del Tribunal de Primera Instancia y el señor Rodríguez Robles otorgaron la Escritura Núm. 5 sobre Venta Judicial ante la licenciada Rivera Pérez ("Escritura Núm. 5 de 2012"). Mediante esta escritura, el Alguacil formalizó la venta, cesión, adjudicación y traspaso de la titularidad de la Finca Núm. 6,969 de Naguabo a favor del señor Rodríguez Robles. Dicha escritura se presentó ante el Registro el 17 de abril de 2013 para su oportuna calificación e inscripción.

Después de seis años de poseer la propiedad y luego de haber invertido dinero en arreglar la estructura, el señor Santana se propuso vender el inmueble objeto de la transacción. Indicó que, como parte del trámite, obtuvo un estudio de título el cual mostró que varias transacciones relacionadas a la propiedad en cuestión tenían problemas de inscripción en el Registro de la Propiedad ("Registro"). También reflejó que el inmueble tenía gravámenes hipotecarios y de embargo que este desconocía. El señor Santana aseveró que la licenciada Rivera Pérez conocía los problemas relacionados a la titularidad de esa propiedad y aun así se "prest[ó] como notaria" para otorgar la escritura de compraventa.[3]

El 15 de noviembre de 2019, la licenciada Rivera Pérez presentó su contestación a la queja. En síntesis, arguyó que no incurrió en violación alguna al Código de Ética Profesional, supra, y que mantuvo su deber de sinceridad en todo momento con las partes involucradas en la transacción, los tribunales, el Registrador de la Propiedad ("Registrador") y terceros involucrados en el caso. Asimismo, expresó que se mantuvo en comunicación constante con el señor Rodríguez Robles y el señor Santana. Además, explicó que hizo constar en el instrumento público que se realizó un estudio de título, que los comparecientes recibieron copia del documento y que explicó el significado de las observaciones

---

[3] Anejo II del Informe de la Oficina de Inspección de Notarías.

de dicho estudio. Afirmó que el señor Santana seleccionó el proceso disciplinario como una vía para resolver asuntos que son de la competencia del Tribunal General de Justicia. Por último, solicitó el archivo de la queja.

El 24 de marzo de 2021 la Oficina de Inspección de Notarías (ODIN) presentó un informe donde resumió los hechos pertinentes a la queja y realizó un análisis sobre la conducta de la notaria. Como parte de su investigación, la ODIN corroboró el trasfondo registral de la propiedad objeto de la Escritura Núm. 2 de 2013 y los problemas que impedían la inscripción de la compraventa. De esa forma pudo constatar que la traba en el Registro se debía a la falta de tracto sucesivo dado que el señor Rodríguez Robles – quien compareció como vendedor – no aparecía como titular registral de la propiedad. En cambio, la propiedad estaba inscrita a nombre de la Srta. Yadira Rodríguez Ortiz ("señorita Rodríguez Ortiz"). En el informe la ODIN relató las razones por las que el inmueble no estaba inscrito a nombre del señor Rodríguez Robles. Esto se debió a una serie de faltas y errores en la inscripción de transacciones anteriores.

En síntesis, la Finca Núm. 6,969 aquí en controversia estaba inscrita a nombre del Sr. Nelson Ezequiel Ramos Díaz ("señor Ramos Díaz"). El 1 de mayo de 2007 el señor Rodríguez Robles obtuvo el título del inmueble mediante venta judicial en ejecución de una sentencia de cobro de dinero contra el señor Ramos Díaz. Sin embargo, en lo que se resolvía el procedimiento judicial de cobro de dinero, el señor Ramos

Díaz le vendió la propiedad a la señorita Rodríguez Ortiz. La nueva titular presentó en el Registro su escritura de compraventa junto con una escritura de hipoteca para la inscripción correspondiente. De conformidad, el Registro inscribió tanto la compraventa como la hipoteca, pero por inadvertencia las inscribió en la Finca Núm. 6,609 en vez del número 6,969 como correspondía. Este error conllevó que las constancias del Registro reflejaran que el titular de la Finca Núm. 6,969 era el señor Ramos Díaz hasta el 2019. En ese año se reconoció la titularidad de la señorita Rodríguez Ortiz de la Finca Núm. 6,969, al extender un asiento abreviado al amparo de la *Ley para Agilizar el Registro de la Propiedad*, Ley Núm. 216-2010, 30 LPRA sec. 1821 et seq.

Debemos destacar que el 21 de marzo de 2017, el Registrador de la Propiedad de Humacao suscribió una notificación de deficiencias a la licenciada Rivera Pérez. En consecuencia, la Escritura Núm. 5 de 2012, sobre venta judicial, así como la Escritura Núm. 2 de 2013, sobre compraventa, fueron retiradas del Registro. Como consecuencia de lo anterior, la licenciada Rodríguez Santos presentó una *Urgente Solicitud de Embargo en Ejecución de Sentencia*, en la que le informó al tribunal que recibió una notificación de falta del Registrador. Explicó que, de acuerdo con el Registrador, la ejecución de la sentencia que motivó la venta judicial en este caso no siguió el procedimiento legal prescrito por ley. El Registrador señaló que, al ser una sentencia en cobro de dinero, el procedimiento para su

ejecución se encuentra regulado por las disposiciones de las Reglas 51.2 y 51.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2 & 51.3. Por tanto, la licenciada Rodríguez Santos solicitó una anotación preventiva de embargo de la propiedad para proceder con la ejecución de la sentencia, conforme a las Reglas 51.2 y 51.3 de las Procedimiento Civil, supra.

Ahora bien, lo importante para evaluar la conducta profesional de la notaria es si esta conocía las discrepancias del Registro al momento de autorizar la Escritura Núm. 2 de 2013. Al respecto, la ODIN indicó que la licenciada Rivera Pérez hizo constar en la Escritura Núm. 2 de 2013 que el señor Rodríguez Robles era el titular de la propiedad que se vendía, aspecto que sabía que no era cierto. Señaló que, según se hizo constar en el instrumento público, la notaria confirmó el trasfondo registral de la propiedad con un Estudio de Título que preparó el Investigador Federico Morales Señeriz nueve días previo al otorgamiento de la escritura.

Según expresó la ODIN, de ese estudio de título surgía que la Finca Núm. 6,969 constaba inscrita a favor del señor Ramos Díaz. Además, que existían dos negocios jurídicos recogidos en instrumentos públicos que se presentaron en el Registro desde el 2007 los cuales estaban pendientes de calificación e inscripción. El investigador expresó que esos dos instrumentos se encontraban pendientes de reinscripción, pues anteriormente se habían inscrito en una finca incorrecta. Dado lo anterior la ODIN razonó que, independientemente de que esas transacciones fueron

identificadas bajo un número de finca equivocado, del estudio de título surgía que estas estaban pendientes. Por tanto, se entendía que formaban parte del tracto registral de la propiedad investigada. Para ello señaló que el 12 de junio de 2019 el Registrador notificó que la Escritura Núm. 2 de 2013 tenía deficiencias de tracto sucesivo porque del Registro de la Propiedad surgía que la propiedad constaba inscrita a favor de la señorita Rodríguez Ortiz.[4]

En vista de lo anterior, la ODIN aseveró que la licenciada Rivera Pérez sabía de la discrepancia entre los hechos que hizo constar en el instrumento público y las constancias del Registro desde antes de otorgar la Escritura Núm. 2 de 2013. Agregó, incluso, que la notaria conocía desde mayo de 2012, al menos un año antes de otorgar la escritura, la situación con la titularidad del inmueble por una información obtenida en un proceso de ejecución activo presentado por una entidad bancaria e hipotecaria. Para la

---

[4] El Registrador inscribió la Escritura Núm. 11 de 2007 sobre *Compraventa* y reconoció la titularidad de la señorita Rodríguez Ortiz de la Finca Núm. 6,969 el 12 de junio de 2019 al extender un asiento abreviado al amparo de la Ley Núm. 216-2010. De igual forma ese día, el Registrador extendió el asiento de inscripción de la Escritura Núm. 461 de 2007 sobre *Primera Hipoteca* de la señorita Rodríguez Ortiz. Por último, en esa fecha hizo la correspondiente *Anotación de Demanda en Ejecución de Hipoteca*, conforme la Instancia Registral relacionada con el Caso Civil Núm. HSCI2007-1623. Por tanto, el Registrador inscribió la propiedad de la señorita Rodríguez Ortiz antes que las del señor Rodríguez Robles. Inconforme, la licenciada Rivera Pérez presentó ante la consideración del Registrador de la Propiedad un *Escrito de Recalificación*, para rebatir la notificación del señalamiento hecho sobre la falta de tracto. El 14 de agosto de 2019, el Registrador reiteró su negativa en dar acceso al Registro a los instrumentos públicos autorizados por la licenciada Rivera Pérez y procedió a efectuar la correspondiente *Anotación Preventiva* en los tomos digitales del Registro. Así las cosas, el título de venta judicial del señor Rodríguez Robles no logró acceso al Registro. La licenciada Rivera Pérez no presentó un recurso gubernativo ante este Tribunal para impugnar la determinación del Registrador.

ODIN, lo anterior, sumado a la información contenida en el estudio de título y los documentos complementarios obtenidos en el CRIM y en el Departamento de Hacienda, demostraba que la titularidad del señor Rodríguez Robles estaba en duda. Por tanto, dedujo que la notaria se debió abstener de autorizar el instrumento. La ODIN concluyó que, al no abstenerse, la licenciada Rivera Pérez incumplió los artículos 2, 14 y 15(f) de la Ley Notarial, supra, y los Cánones 18, 35 y 38 del Código de Ética Profesional, supra. La ODIN recomendó que suspendamos a la letrada del ejercicio de la notaría por un término máximo de tres meses por infringir los Cánones 18, 35 y 38 del Código de Ética Profesional, supra, y los artículos 2, 14 y 15(f) de la Ley Notarial, supra.

En reacción al informe de la ODIN, la licenciada Rivera Pérez sostuvo que no violó la Ley Notarial, supra, ni los Cánones de Ética Profesional, supra, dado que, por razones ajenas a su voluntad, el Registro por años y hasta el 2019, reflejó serios errores en relación con el tracto y la titularidad de la Finca Núm. 6,969. Exteriorizó que en el momento en que intervino como notaria para autorizar la escritura de compraventa en el año 2013, la señorita Rodríguez Ortiz no aparecía como dueña registral de la Finca Núm. 6,969. Así, cuestionó la conclusión de la ODIN de que ella conociera que la Finca Núm. 6,969 había sido vendida a la señorita Rodríguez Ortiz. Aseguró que lo único que sabía era que existía la posibilidad de un error registral en relación con la propiedad.

De acuerdo con lo anterior, reiteró que las constancias del Registro no indicaban que el titular de la Finca Núm. 6,969 fuera una persona distinta al señor Ramos Díaz. Señaló que para la fecha en que otorgó la Escritura Núm. 2 de 2013, lo que surgía del Registro era que: (1) el señor Rodríguez Robles tenía una sentencia a su favor dictada contra el señor Ramos Díaz en el Caso Núm. E CD2005-1821 y (2) se concretó la venta judicial de la Finca Núm. 6,969 a favor del señor Rodríguez Robles.

La licenciada Rivera Pérez manifestó que en el 2017 el Registrador notificó faltas en la escritura de venta judicial en virtud de la cual el señor Rodríguez Robles adquirió la propiedad, sin embargo, omitió notificar problemas de tracto. Tampoco anotó los negocios jurídicos del 2007 que presuntamente le otorgaban la titularidad de la finca 6,969 a la señorita Rodríguez Ortiz. La notaria sostuvo que no era razonable ni jurídicamente correcto aplicar las disposiciones de inscripción automática del Art. 2 de la Ley Núm. 216-2010, 30 LPRA sec. 1821, cuyas inscripciones solo tienen presunción de corrección conforme el Art. 7 de la mencionada ley. Arguyó que el decreto de inscripción automática no tenía el efecto de autorizar la inscripción de instrumentos públicos defectuosos ni de inscribir instrumentos que no fueron anotados en el asiento correcto.

La notaria indicó que la ODIN se equivocó al sugerir que las dos transacciones del 2007 --la venta de la propiedad a la señorita Rodríguez Ortiz y la hipoteca sobre la propiedad--

tenían efecto legal alguno antes del 2019. También indicó que la ODIN erró al sugerir que la notaria debió presumir que esas transacciones habían accedido al registro como inscripciones en la Finca Núm. 6,969, y así, abstenerse de autorizar la Escritura Núm. 2 de 2013.

La licenciada Rivera Pérez añadió que la ODIN falló al imputarle violación a los Arts. 14 y 15(f) de la Ley Notarial de Puerto Rico, supra. Aseguró que al otorgar la Escritura Núm. 2 de 2013 tomó previsiones para advertirle a los otorgantes sobre las constancias del Registro, entre estas: (1) entregarles copia e informarles sobre el contenido del estudio de título del que surgía que los negocios jurídicos del 2007 relacionados con la señorita Rodríguez Ortiz no estaban inscritos; y (2) explicarle al señor Santana la información del estudio de título y lo que significaba la observación de los documentos pendientes de inscripción. Expuso que, contrario a lo que sugirió la ODIN, el artículo 15(f) de la Ley Notarial, supra, no exigía que les hiciera advertencias adicionales a las partes otorgantes de la Escritura Núm. 2 de 2013, sino que debía consignar haberles hecho de palabra las reservas y advertencias legales pertinentes.

Además, sostuvo que incluyó advertencias específicas en la Escritura Núm. 2 de 2013, según lo exige el Art. 15(f) de la Ley Notarial, supra. La notaria afirmó que cumplió con informarse e informar a los comparecientes sobre el estado registral de la propiedad y que obtuvo el consentimiento

informado de los comparecientes para el otorgamiento de los instrumentos públicos, por lo que no incumplió el artículo 14 de la Ley Notarial, supra. Puntualizó que todo negocio jurídico conllevaba un riesgo y que el señor Santana fue informado de las constancias del Registro y decidió libre y voluntariamente proceder con la compraventa.

Finalmente, la notaria expresó que la ODIN no incluyó los fundamentos para concluir que ella hubiere violado los Cánones 18, 35 y 38 de Ética Profesional, supra. Enunció que no está de acuerdo con la recomendación de la ODIN de que se le suspenda tres meses del ejercicio de la notaría y que, a lo sumo, sería suficiente una censura enérgica y la sanción económica conforme al artículo 62 de la Ley Notarial, 4 LPRA sec. 2101.

Examinado el cuadro fáctico, procedemos entonces a esbozar las normas aplicables.

## II.

### A. La notaría en Puerto Rico

El notario, como profesional del derecho, tiene el deber de "ejercer una puntillosa función que robustece de seguridad y certeza jurídica los hechos y actos que se consignan bajo su fe notarial". L. F. Estrella Martínez, *El notariado latino en Puerto Rico como exponente de las aspiraciones del sistema jurídico iberoamericano*, 60 Rev. D. P. 547, 545-546 (2021). Véase, además, *In re* Soto Aguilú, 2021 TSPR 162, en la pág. 12 (2021), *In re* Vélez, 103 DPR 590, 597-598 (1975). Por lo

anterior, debe poseer, como características personales indispensables probidad, capacidad profesional y diligencia. *In re* Sánchez Reyes, 204 DPR 548, 567 (2020). En consecuencia, hemos reiterado que los notarios no son meros autómatas, en el sentido cartesiano de la palabra, pues su función no es solo la de legalizar las firmas. *In re* Soto Aguilú, supra, en la pág. 12; *In re* Peña Osorio, 202 DPR 779, 789 (2019). Por el contrario, los miembros de la profesión notarial tienen una obligación ética de comprobar que el instrumento público ante su presencia cumplimente la totalidad de las formalidades que exige la legislación vigente. *In re* Soto Aguilú, 2021 TSPR 162, en las págs. 12-13; *In re* Peña Osorio, supra; *In re* Torres Alicea, 175 DPR 456, 460 (2009). Después de todo, el notariado se compone de juristas que tienen un deber inescapable de ilustrar a los otorgantes las consecuencias de sus actos jurídicos y debe cerciorarse que el instrumento público cumple con los requisitos necesarios para que la voluntad de los otorgantes sea llevada a cabo. *In re* Martínez Sotomayor, supra; *In re* Pagani Padró, 198 DPR 812, 821 (2017). De esta manera, el rol del notario "como promotor de la equidad y garantía de derechos de las personas constituye una responsabilidad social ineludible". L. F. Estrella Martínez, *La figura del notario como promotor del acceso a la justicia*, Ed. Situm. (2019), pág. 12.

De igual forma, el notario tiene el deber ineludible de ejercer su función con excesivo cuidado, esmero y celo profesional. *In re* Soto Aguilú, 2021 TSPR 162, en la pág. 13;

*In re* Maldonado Maldonado, 197 DPR 802, 809 (2017); *In re* Pacheco Pacheco, 192 DPR 553, 562 (2015). Esto responde al marco deontológico reseñado y a la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*, el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y los cánones del Código de Ética Profesional, 4 LPRA Ap. IX; *In re* García Cabrera, 201 DPR 902, 918 (2019).

En particular, el artículo 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, funda el principio de la fe pública notarial:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

De conformidad, los miembros de la profesión legal juramentados como notarios o notarias están obligados a cumplir la función notarial que representa la fe pública y la ley para todas las partes. *In re* Vázquez Margenat, 204 DPR 968 (2020).

Asimismo, el artículo 14 de la Ley Notarial, 4 LPRA sec. 2032, instituye que "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y adaptándola a las formalidades jurídicas necesarias para su eficacia". A la par, como parte de su función, es necesario

que los profesionales de la notaría se aseguren de obtener el consentimiento informado de los otorgantes, por medio de la explicación, aclaración y advertencias necesarias. *In re Torres Alicea*, supra, pág. 461.

Por su parte, el artículo 15(f) de la Ley Notarial, 4 LPRA sec. 2033, le exige al notario el deber de consignar en la escritura, entre otras cosas, "[e]l haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente".

Así como el profesional de la notaría debe cumplir con la Ley Notarial, supra y su reglamentación aplicable, tiene que comportarse bajo el umbral de los Cánones de Ética Profesional, supra.

## B. Código de Ética Profesional

El Canon 18 del Código de Ética Profesional, supra, exige que los abogados y abogadas, incluso cuando se desempeñen como notarios o notarias, rindan una labor idónea de competencia y diligencia. *In re Maldonado Maldonado*, supra, pág. 812. De esta manera, el notariado puertorriqueño puede demostrar que tiene el conocimiento jurídico necesario durante la ejecución de sus funciones. *In re Torres Rivera*, supra.

De igual forma, el deber de diligencia que establece el Canon 18 obliga a los profesionales de la notaría a

ilustrar e instruir a los otorgantes con explicaciones, aclaraciones y advertencias necesarias, a la luz del derecho positivo notarial y la jurisprudencia emitida por este Foro. *In re* García Cabrera, supra, pág. 919.

El profesional de la notaría, al ser el custodio de la fe pública notarial, no puede darse el lujo de desconocer el estado de las constancias del Registro de la Propiedad. *In re* Palmer Ramos, supra, pág. 257. Es harto conocido en la comunidad notarial que el estudio de título no asegura que no hayan sido inscritas otras cargas presentadas con posterioridad a la fecha en que este se realizó. *In re Torres Alicea*, supra, pág. 461. Sin embargo, este deber de investigar los antecedentes registrales de la propiedad antes del otorgamiento de la escritura responde a que, si omitiese tal investigación o si no la hiciese conforme a los más altos estándares de diligencia y competencia, incumpliría con su deber de informar apropiadamente a los otorgantes, lo que configura una infracción a la fe pública notarial. *In re* Soto Aguilú, 2021 TSPR 162, en la pág. 17; *In re* López Maldonado, 130 DPR 863, 865-866 (1992). Por lo tanto, hemos repetido que la falta de investigación apropiada y responsable es en sí misma una violación a la Ley Notarial de Puerto Rico. Íd; *In re* Pagani Padró, supra, pág. 822; *In re* Aponte Berdecía, 161 DPR 94, 104 (2004).

**De igual forma, hemos resuelto que un notario o una notaria infringe el Canon 18 si presenta ante el Registro una escritura sin corroborar las constancias registrales, pues**

**con dicha conducta incumple con su deber de verificar si el instrumento público posee defectos que impidan su inscripción en el Registro de la Propiedad**. *In re* García Cabrera, supra, págs. 925-926. Lo anterior activa una presunción incontrovertible de la falta de conocimiento del notario o la notaria con relación a las normas jurídicas relativas y relevantes a los negocios jurídicos autorizados. *In re* Maldonado Maldonado, supra, pág. 813; *In re* Vargas Velázquez, supra, pág. 694.

Igualmente, es vital discutir el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX. En lo pertinente, indica lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. [...]
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos.

Hemos decretado que la violación a dicho canon "puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario". *In re* Gordon Menéndez I, 171 DPR 210, 216 (2007); *In re* Sepulveda Girón, 155 DPR 345, 363 (2001).

## III.

La licenciada Rivera Pérez fue la notaria autorizante de la Escritura Núm. 2 de 2013 sobre *Compraventa*. En dicho instrumento público se afirmó que el señor Rodríguez Robles era el titular de la Finca Núm. 6,969. La licenciada Rivera Pérez confirmó las constancias del Registro en el estudio de título preparado por el investigador Morales Señeriz que tenía fecha del 14 de agosto de 2013. Es decir, lo revisó nueve días previos al otorgamiento de la escritura. Por tanto, la notaria conocía que existían dos transacciones --la venta de la propiedad a la señorita Rodríguez Ortiz y la hipoteca sobre la propiedad-- recogidas en sendos instrumentos públicos autorizados en el Registro de la Propiedad desde el año 2007, para su oportuna calificación e inscripción.

Asimismo, independientemente de que dichos instrumentos públicos se inscribieran por un número de finca diferente, el Estudio de Título exteriorizaba que se habían inscrito por el mecanismo del artículo 2 de la Ley Núm. 2 de 2010, supra. Después de todo, los asientos en el Registro inscritos en virtud de la *Ley para Agilizar el Registro de la Propiedad*, supra, se presumen que son correctos y exactos dado que el fin de dicha ley fue adelantar los trabajos del Registro y combatir el retraso en la calificación e inscripción de documentos públicos. DLJ Mortg. Cap., Inc. v. Garcia Ramos, 2021 TSPR 66, pág. 19 (2021).

Con dicha información, la licenciada Rivera Pérez debió hacer las correspondientes advertencias en la escritura respecto a las dos transacciones que señaló el estudio de título o se debió abstener de autorizar dicho instrumento público hasta que se resolviera la discrepancia registral. También surge del expediente que la licenciada Rivera Pérez conocía desde mayo de 2012 que el señor Ramos Díaz le había vendido la propiedad a la señorita Rodríguez Ortiz en el 2007. Incluso, sabía que la compraventa y la hipoteca de la señorita Rodríguez Ortiz se habían presentado en una finca incorrecta. Supo lo anterior porque la entidad bancaria inició un procedimiento de ejecución de hipoteca en contra de la señorita Rodríguez Ortiz. A su vez, de los documentos complementarios obtenidos en el CRIM y en el Departamento de Hacienda se desprende la discrepancia narrada. Todo lo anterior constituye una falta de diligencia y de competencia exigida en el Canon 18 del Código de Ética Profesional, supra.

La notaria debió plasmar las aclaraciones y advertencias de forma específica y expresa en la Escritura Núm. 2 de 2013 en cumplimiento con el deber establecido en la Ley Notarial, supra. Es necesario destacar que del estudio de título que utilizó la notaria surgía que la propiedad se encontraba inscrita a favor del señor Ramos Díaz y no a favor del señor Rodríguez Robles, como la notaria indicó en el referido instrumento público. Un notario debe abstenerse de otorgar una escritura pública de compraventa si surge del estudio de título la existencia de discrepancias registrales como las de

esta finca o como mínimo, dejar por escrito las advertencias con relación a dichas discrepancias. Por tanto, ante la conducta descrita debemos concluir que la licenciada Rivera Pérez incumplió con los artículos 2, 14 y 15(f) de la Ley Notarial, supra, así como los Cánones 18 y 38 del Código de Ética Profesional, supra.

**IV.**

Al determinar la sanción disciplinaria que se impondrá a un abogado, podemos considerar los factores siguientes: (1) la buena reputación del abogado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente, y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien en relación con los hechos. *In re* Rivera Contreras, 202 DPR 73 (2019). Para determinar la sanción correspondiente es imprescindible velar por el principio de proporcionalidad.

De la misma manera, este Tribunal no debe ser utilizado para saciar la sed de venganza que pueda tener un ciudadano en contra de un miembro de la profesión. El procedimiento disciplinario no es el mecanismo para reclamar daños ni resolver aparentes dobles inmatriculaciones. Este proceso es para determinar si de la totalidad de las alegaciones de la queja se desprende un comportamiento antiético que active

nuestra jurisdicción para proteger a la comunidad ante una falta de un profesional del derecho.

En este caso, estamos ante la primera falta de la licenciada Rivera Pérez en el ejercicio de la profesión legal y en el notariado. No tiene historial previo disciplinario y este error sucedió en los inicios de la licenciada Rivera Pérez en la práctica notarial.

**V.**

Por los fundamentos expuestos, suspendemos a la Lcda. Julissa Rivera Pérez del ejercicio notarial por un término de tres meses. De igual forma, se le apercibe de su deber de observar de forma escrupulosa los principios deontológicos que se recogen en el Código de Ética Profesional. También le apercibimos que, de incurrir en otro acto que contravenga las normas antes señaladas, estará sujeta a sanciones disciplinarias mucho más severas.

Le ordenamos notificar a todas las personas que han procurado de sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendiente y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión Per Curiam y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría al solicitarlo en el futuro.

Asimismo, se le ordena al Alguacil de este Foro incautar inmediatamente la totalidad de la obra y el sello notarial de la licenciada Rivera Pérez y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Julissa Rivera Pérez        AB-2019-0174        Queja
    (TS-18,029)

SENTENCIA

En San Juan, Puerto Rico, a 15 de febrero de 2022.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión inmediata de la Lcda. Julissa Rivera Pérez del ejercicio de la notaría por un término de tres meses.

De igual forma, se le apercibe de su deber de observar de forma escrupulosa los principios deontológicos que se recogen en el Código de Ética Profesional. También le apercibimos que, de incurrir en otro acto que contravenga las normas antes señaladas, estará sujeta a sanciones disciplinarias mucho más severas.

Le ordenamos notificar a todas las personas que han procurado de sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendiente y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría al solicitarlo en el futuro.

Asimismo, se le ordena al Alguacil de este Foro incautar inmediatamente la totalidad de la obra y el sello notarial de la licenciada Rivera Pérez y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia a la Lcda. Julissa Rivera Pérez.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres, la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García censurarían a la Lcda. Julissa Rivera Pérez. El Juez Asociado señor Kolthoff Caraballo no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo