*In re* CARLOS ROBERTO VÉLEZ, querellado.

*Número:* O-72-360     *Resuelto:* 25 de marzo de 1975

*Myriam Naveira de Rodón, Procuradora General, J. F. Rodríguez Rivera, Procurador General Interino, Roberto Armstrong, Jr., Candita Orlandi* y *Héctor R. Orlandi Gómez, Procuradores Generales Auxiliares,* abogados de El Pueblo; *Carlos Roberto Vélez,* por propio derecho, *José Francisco Aponte Pérez* y *Juan S. Pagán Rodríguez,* abogados del querellado.

PER CURIAM: La Procuradora General de Puerto Rico presentó querella de desaforo contra el abogado-notario Carlos Roberto Vélez formulándole los siguientes cargos:

*"PRIMER CARGO:* El día 21 de julio de 1969 Doña María Báez Rodríguez y Don José Collazo López otorgaron la escritura de compraventa número 16 ante el notario querellado Lic. Carlos Roberto Vélez, cuyo objeto fue la finca número 2,567 de Río Piedras, inscrita en el Registro de la Propiedad, Sección Quinta de San Juan, al folio 61 del tomo 240 de Río Piedras. Dicha escritura fue retenida por el notario y luego presentada al Registro de la Propiedad el día 23 de julio de 1969, asiento de presentación número 393 del diario 37 de dicha sección. Dicho documento fue retirado del Registro de la Propiedad el día 24 de septiembre de 1969. No empece su participación como notario en la anterior transacción el propio querellado, a sabiendas e intencionalmente compareció en 31 de octubre de 1969 junto con la misma Doña María Báez Rodríguez para otorgar entonces ante el notario Felipe Benicio Sánchez Rivera una escritura de compraventa sobre la misma finca descrita anteriormente, apareciendo ahora el querellado como comprador. Dicha escritura fue presentada al Registro de la Propiedad por Jesús M. Roja el día 9 de diciembre de 1970, asiento de presentación número 423 del diario 50 de dicha sección, quedando la propiedad inscrita a nombre del querellado todo ello en perjuicio del primer comprador y a sabiendas del querellado.

El primer comprador, Sr. José Collazo López, no había renunciado ni transferido los derechos por él adquiridos según la referida escritura número 16 otorgada ante el querellado, ni había autorizado a éste a que retirara dicho documento del Registro de la Propiedad ante el cual había sido presentado.

*SEGUNDO CARGO:* En o alrededor del 30 de julio de 1969 y en fechas posteriores, el querellado, Lic. Carlos Roberto Vélez, observó una conducta impropia e ilegal, consistente en lo siguiente. Siendo abogado del Sr. José Collazo López, dirigió una carta a la firma comercial González y Serra, instruyéndola para que ciertos pagos que debían hacerse al Sr. Collazo López fueran enviados a o entregados en la Oficina del querellado. En o alrededor del día 25 de agosto de 1969 y a tenor de lo anterior, dicha firma envió por correo a la Oficina del querellado el cheque número 8-67 por la suma de $300.00 pagadero a la orden del Sr. Collazo López. El día 9 de septiembre de 1969 el referido cheque fue depositado en la cuenta corriente bancaria del Bufete Vélez y Vélez (El querellado era para las fechas pertinentes al cargo uno de los abogados de la referida firma legal) habiendo el querellado o la firma de la cual era parte dispuesto de los fondos para su propio o personal beneficio. Al ser depositado dicho cheque, el nombre del Sr. Collazo López aparecía escrito, a mano, al dorso del mismo en forma tal que constituía un endoso.

El Sr. Collazo López nunca autorizó al querellado a requerir de la firma González y Serra que enviara los pagos adeudados al Sr. Collazo López, según se expresa en la precitada carta ni tampoco autorizó a que su nombre fuera escrito al dorso del cheque, ni endosó el mismo ni autorizó que fuera depositado en la aludida cuenta bancaria.

El Sr. Collazo López requirió reiteradamente del querellado la entrega del importe en efectivo del cheque descrito, negándose a ello dicho querellado, en perjuicio económico del Sr. Collazo López.

*TERCER CARGO:* El querellado Lic. Carlos Roberto Vélez, al terminar sus relaciones profesionales con el Sr. José Collazo López, retuvo varios expedientes y evidencia documental de casos en que había representado a éste como abogado. Al ser requerido por el Sr. Collazo López para que devolviera dichos documentos, se negó a ello.

En o alrededor del día 29 de marzo de 1972 el querellado exigió del Sr. Collazo López, como condición previa a la devolución de dichos documentos, que éste firmara una declaración jurada exonerando al querellado de la conducta relatada en los dos cargos anteriores. Esta declaración fue suscrita en San Juan ante el

notario, Lic. Samuel Maduro, affidavit núm. 2772 de fecha 29 de marzo de 1972.

El Sr. Collazo López declaró bajo juramento en esta Oficina que la declaración a que se hace referencia en el párrafo anterior es falsa en su contenido y fue instigada por el querellado y firmada bajo la exigencia de éste, como condición indispensable para la entrega de los expedientes y documentos retenidos, propiedad del declarante y retenidos por el querellado.

*CUARTO CARGO:* En o alrededor del 10 de abril de 1963 y subsiguientemente, el querellado, Lic. Carlos Roberto Vélez, observó una conducta negligente y altamente impropia de un abogado, consistente en lo siguiente. Convino en asumir la representación legal de José M. Seguí, Jr., Isabelita M. de Seguí, Zaida Rodríguez de Carrión y Josefina Vera en una reclamación por daños y perjuicios sufridos por ellos en un accidente de automóvil. El querellado radicó una demanda en el Tribunal Superior de Puerto Rico, Sala de San Juan, Caso Civil 63-1397 el día 10 de abril de 1963, *José Miguel Seguí* v. *Valencia Service Co. Inc.* Faltando a sus obligaciones con estos clientes y con el tribunal el querellado no compareció a las vistas señaladas, no mantuvo a sus clientes informados de los incidentes del caso ni tomó medidas reparadoras y como resultado de ello la demanda fue desestimada por incomparecencia de los demandantes a varios señalamientos que fueron notificados al querellado por el tribunal.

La conducta del querellado descrita en los anteriores cargos es impropia e ilegal y contraria a los cánones de ética profesional que regían la conducta de los abogados y notarios de Puerto Rico a la fecha de los hechos relatados."

El querellado presentó su contestación exponiendo lo siguiente:

"—: *CONTESTACION A PRIMERO, SEGUNDO Y TERCER CARGOS* :—El compareciente acepta haber firmado y comparecido en las escrituras que se mencionan en estos cargos, negando los demás hechos imputados, con la aclaración de que el Sr. José Collazo López convino con la Sra. María Báez Rodríguez en actuar como testaferro de ésta en una transacción de préstamo para cancelar ciertos créditos hipotecarios vencidos que gravaban la propiedad objeto de dichas escrituras, y contrario a lo acordado, el Sr. José Collazo López, sin haber desembolsado dinero

alguno al adquirir título sobre dicha propiedad, en abierto incumplimiento y perjuicio hacia la Sra. Báez Rodríguez, intentó vender a terceras personas la mencionada propiedad, todo ello a espaldas de su legítima propietaria y de su abogado, el suscribiente.

Se aclara además que en el acuerdo convenido entre la Sra. Báez Rodríguez y el Sr. José Collazo López, que era al solo efecto de utilizar el nombre y crédito de este último para poder concertar la transacción del préstamo ofreciendo en garantía hipotecaria la propiedad en cuestión ya que la Sra. Báez Rodríguez no cualificaba por sus escasos recursos para ese tipo de transacción, que las rentas de alquiler derivadas de dicha propiedad continuarían siendo de la exclusiva propiedad de su legítima dueña, la Sra. Báez Rodríguez, cuyos pagos deberían efectuarse a nombre del Sr. José Collazo López para remitirlos a la oficina del suscribiente para que éste se los entregara a la Sra. Báez Rodríguez, o, si por cheque, se los endosara, a la Sra. Báez Rodríguez. Nuevamente, contrario a lo pactado, y en abierta traición y perjuicio a la Sra. María Báez Rodríguez, el Sr. José Collazo López no solamente se apoderó de las rentas devengadas, privando así a su legítima dueña de su aprovechamiento y disfrute, sino que sin autorización ni consentimiento alguno procedió a arrendar algunos apartamientos de dicha propiedad que se hallaban desocupados, concertando contratos de arrendamiento con sus inquilinos y cobrando y reteniendo para sí el importe de las rentas cobradas, todo ello en perjuicio de la Sra. Báez Rodríguez.

Se aclara además que el suscribiente retuvo varios expedientes de casos ya terminados y/o resueltos del Sr. José Collazo López porque éste le adeudaba al suscribiente honorarios en exceso de cuatro mil dólares originados por varias gestiones y representaciones profesionales, incluyendo litigios en los tribunales y ante esta Honorable Superioridad, cuyo importe el Sr. José Collazo López se negó a pagar hasta que el suscribiente quedó convencido que jamás recuperaría siquiera parte de dichos honorarios e hizo entrega voluntaria de los expedientes al nuevo abogado del Sr. José Collazo López. La retención de dichos expedientes por el suscribiente en forma alguna afectó derecho alguno del Sr. José Collazo López.

—: *CONTESTACION A CUARTO CARGO* :—El Querellado acepta haber tramitado el caso civil número 63-1397 ante el

Tribunal Superior de Puerto Rico, Sala de San Juan, negando enfáticamente haber faltado en sus obligaciones con los clientes que representaba y hacia el Tribunal. Afirmativamente alega que para la fecha en que se tramitaba dicha reclamación, el suscribiente formaba parte de la firma legal del Lcdo. Benicio Sánchez Castaño y que le notificó todas las vistas y señalamientos a sus representados. En las ocasiones en que el caso estuvo señalado para vista en su fondo, luego de haber sido notificadas las partes que representaba el Querellado, una de las demandantes que era testigo indispensable para la presentación de la prueba siempre se hallaba en estado de embarazo y a última hora el suscribiente se veía obligado a solicitar la suspensión del caso por tal motivo. Esto ocasionó que en dos (2) ocasiones el Tribunal ordenara el archivo del caso por la incomparecencia inexcusable de la parte demandante, habiendo el suscribiente solicitado y obtenido por dos (2) ocasiones su re-apertura. Posteriormente se señalaron nuevas vistas en su fondo las cuales les fueron notificadas a las partes representadas por el suscribiente, habiendo recibido las dos (2) notificaciones el suscribiente devueltas por el correo, perdiendo así todo contacto con las partes que representaba quienes no hicieron gestión alguna por restablecer contacto con el Querellado, hasta aproximadamente dos (2) años después de haberse ordenado el archivo del caso por tercera vez, en cuya ocasión el Querellado nada pudo hacer porque ni siquiera conocía el paradero de la parte que representaba.

POR TODO LO CUAL, el Querellado respetuosamente solicita se declare sin lugar la querella interpuesta en su contra y quede exonerado de todos y cada uno de los cargos imputados."

Designamos al Juez Superior Hon. Francisco Collazo Lizardi Comisionado Especial, quien celebró varias vistas recibiendo prueba testifical y documental y oportunamente rindió un elaborado y excelente Informe. El caso quedó sometido a nuestra consideración el 24 de enero de 1975 al presentar el querellado su escrito denominado *Señalamientos al Informe del Comisionado Especial.*

Hemos examinado y confrontado detenidamente el Informe del Comisionado Especial con la prueba testifical y documental presentada y consideramos exactas y fieles las determinaciones

de hechos allí consignadas, las cuales relevan al querellado totalmente de los cargos segundo y cuarto imputádosle. Igualmente estimamos correctas las determinaciones relacionadas con el primer y tercer cargo que reflejan actuaciones indebidas, impropias y antiprofesionales del querellado Carlos Roberto Vélez interviniendo, primero como notario autorizante y luego como parte compradora, en dos escrituras de compraventa simuladas. Los motivos detrás de tales actuaciones surgen de los siguientes hechos:

"Las versiones ofrecidas por los protagonistas del drama de las dos escrituras están reñidas entre sí—la de Collazo y la del querellado—y, por otro lado, la Sra. Báez, quien coincide con la versión del querellado, ofreció a su vez dos declaraciones contradictorias respecto a si hubo o no entrega de dinero al otorgarse la primera escritura. La versión a la que concedemos crédito es la ofrecida por el querellado en el sentido de que ambas ventas fueron simuladas y obedecían a los propósitos de (a) poder obtener crédito para el pago de las hipotecas que gravaban la propiedad, por lo que era necesario utilizar a Collazo como testaferro en la primera escritura ya que por ser éste un comerciante de recursos económicos y la Sra. Báez una persona insolvente, tenía la viabilidad de obtener el financiamiento requerido, no así la Sra. Báez y (b) el traspaso simulado de la Sra. Báez a favor del querellado obedeció al mismo propósito de ganar tiempo para tratar de salvar la propiedad. No concedemos crédito alguno a la versión de Collazo en el sentido de que, '*a los varios días* de otorgada la escritura de compraventa, pagó *en efectivo y sin exigir recibo*' la cantidad de $4,000 a la Sra. Báez como el precio de la compraventa.

Es claro, a nuestro entender, que el propósito detrás de todo este andamiaje era el de lucrarse los tres concernidos adquiriendo una propiedad con un valor de tasación de $75,000–$80,000 con una inversión de $20,000 y pico de dólares y no meramente el del cobro de la sentencia de triple daño, como repetidamente alegó el querellado en el curso de su testimonio. Así fue admitido por la Sra. Báez ante el Procurador y así también lo llegó a admitir el querellado en un extremo de su declaración. Como cuestión de realidad, la parte demandada en el Tribunal de Distrito, con posterioridad a la sentencia y a la ejecución, consignó en el

Tribunal el total adeudado y la demandante no aceptó retirar la suma consignada oponiendo una serie de objeciones a la moción de nulidad, incluyendo entre ellas la defensa del tercero registral." (Escolios omitidos.)

En el pasado, nuestro enfoque doctrinario jurisprudencial sobre escrituras simuladas trataba el asunto sobre una base jurídica más bien de tipo evidenciario, [1] omitiendo nuestras decisiones el pasar juicio sobre la conducta ética per se de un abogado como parte, o actuando en capacidad de notario autorizante, excepto cuando ello se planteaba mediante querella de desaforo por haberse cometido fraude o perjudicado económicamente a tercera persona. *In re Pagán,* 71 D.P.R. 761, 772 (1950); *In re Vergne,* 67 D.P.R. 30, 31 (1947); *In re Ruiz de Val,* 43 D.P.R. 265 (1932); *In re Torregrosa,* 25 D.P.R. 637 (1917). Se partía de la premisa inarticulada de que tales transacciones eran inevitables, habiéndose pronunciado este Tribunal del siguiente modo:

"No deben alentarse las simulaciones. La verdad es el camino. La experiencia demuestra cuán caros se pagan los desvíos de esa ruta central que facilita y afianza todas las transacciones, pero muchas veces de buena fe, por una mal entendida bondad hacia familiares y amigos, por el deseo de poner a salvo intereses de personas débiles o por otros motivos más o menos explicables dentro de un campo de acción compatible en cierto modo con la honradez y la verdad última, se realizan actos simulados que no debe permitirse que tengan luego consecuencias tales que resulten opresivas." *Puig* v. *Sotomayor* 55 D.P.R. 250, 260–261 (1939).

En nuestra indelegable función de imprimirle contenido a los valores éticos que acompaña el ejercicio de la profesión de abogado, en tal rol o como notario, a la par que contribuir al enaltecimiento público de tal ministerio, fijamos

---

[1] Enmarcadas primordialmente en la controversia de si determinada prueba era o no admisible según el Art. 25 de la Ley de Evidencia (32 L.P.R.A. sec. 1668). Véanse: *Alvarado* v. *Bonilla,* 86 D.P.R. 490, 500–501 (1962); *Rossy* v. *Tribunal Superior,* 80 D.P.R. 729, 749 (1958); *Ramírez* v. Ramírez, 65 D.P.R. 544, 547–548 (1946); *Ochoteco, Jr.* v. *Córdova,* 47 D.P.R. 554, 556–561 (1934); *Morales* v. *Franco,* 44 D.P.R. 66, 70 (1932).

otro rumbo o derrotero y rechazamos y condenamos enérgica-mente en nuestra sociedad la participación consciente de un abogado, como funcionario o parte, en el asesoramiento, redac-ción u otorgamiento de documentos simulados, irrespectiva-mente del propósito que anime tal conducta. Lo simulado, sinó-nimo de falso y fingido, en esencia es contrario a la verdad; virtud que constituye el ideal más alto al cual debemos aspirar en nuestra comunidad que se rige al amparo del imperio de la ley. Constituye una negación de lo verdadero y el medio para conferir presuntivamente estado de legitimidad a actos falsos, permitiendo una gama de actuaciones en fraude de acreedores, el erario público y derechos entre partes privadas.

La conducta del querellado Carlos Roberto Vélez en parti-cipar en dos transacciones simuladas—como notario y poste-riormente como parte—conflige con los atributos de sinceridad y honradez que deben caracterizar a todo abogado recogidos en el anterior Canon 22, ($^2$) no siendo excusa el celo profesional desplegado hacia su cliente que se argumenta, pues "[l]a misión del abogado no le permite, y mucho menos exige, en defensa de un cliente, la violación del derecho o ponerse al amparo de cualquier linaje de fraude o engaño. Debe obedecer su propia conciencia y no la de su cliente." Canon 15. No puede curarse lo que es simulado, con otra simulación.

El principio ético expuesto sobre la gravedad per se de lo simulado y la participación de un abogado en tal acción, cobra mayor vigencia y validez cuando éste se desempeña como notario ya que en tal situación se está atentando contra la propia naturaleza de lo que la fe notarial y pública representa en una sociedad que ha depositado confianza en manos de dicho funcionario.

Resolvemos que la validez de los actos y documentos públi-cos no puede dejarse al arbitrio de una norma ética débil, y

---

($^2$) En lo pertinente dispone: "No es profesional ni honorable no ajus-tarse a la *sinceridad de los hechos . . . al redactar affidavits u otros docu-mentos . . . .*" *Práctica Forense Puertorriqueña*, Tomo 1, pág. 444, párrafo 3.

que la participación de un abogado como tal o como notario en negocios simulados es conflictiva con los mejores postulados de conducta que deben regir a los miembros de nuestra profesión de abogado y en su consecuencia ello de ordinario constituye suficiente base para el desaforo.

Respecto al tercer cargo, el ilustre Comisionado Especial concluyó lo siguiente:

"Concluimos en cuanto a este cargo respecta que independientemente de que Collazo adeudare dinero al querellado por motivo de gestiones profesionales de éste, a nuestro juicio, el Lic. Vélez retuvo los documentos en represalia por las maquinaciones insidiosas de Collazo al querer éste apropiarse de una propiedad que en realidad no le pertenecía." (Escolio omitido.)

■ Resulta oportuno reafirmar la regla de que en Puerto Rico un abogado no tiene derecho de retención de los documentos y papeles del cliente, como tampoco existe un gravamen (*attorney's lien*) sobre el producto de una sentencia obtenida, *Cornier* v. *Tribunal Superior*, 96 D.P.R. 253, 255 (1968), aun cuando medien controversias respecto a determinados honorarios. Esta norma es corolario de la libertad de selección que tiene todo ciudadano de encomendar a un abogado una gestión profesional, y de estimarlo conveniente, retirarle la misma; en última instancia la protección y búsqueda de la justicia no puede estar sujeta ni detenerse por el fundamento de no haberse satisfecho los honorarios pactados.

En la querella ante nuestra consideración, la retención del abogado Vélez de ciertos documentos pertenecientes a Collazo fue una represalia indebida que no nos es posible condonar. La condición de abogado en la comunidad no da ni quita ningún derecho, aun cuando el ministerio que anima nuestra profesión exige la mayor prudencia y ponderación en todas las actuaciones.

El comportamiento ético de un abogado implica el reconocimiento de la existencia de unas opciones disponibles y la aceptación de responsabilidad con respecto a la opción esco-

gida. En ningún caso deberá un abogado subordinar sus juicios éticos a los intereses de su cliente, y en igual medida debe actuar con relación a sus propios intereses.

■ Resolvemos que el querellado actuó impropia, indebida e ilegalmente por su participación en las transacciones simuladas descritas precedentemente y al retener indebidamente los documentos aludidos, siendo tal conducta motivo de desaforo.

*Se dictará Sentencia decretando la suspensión del querellado Carlos Roberto Vélez del ejercicio de la profesión de Abogado-Notario por el término de seis (6) meses.*