EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Juan E. Medina Quintana<br>(TS-11,236)<br><br>Enrique J. León Malavé<br>(TS-12,790) | 2025 TSPR 131<br><br>216 DPR ___ |

Número del Caso: CP-2020-0016

Fecha: 3 de diciembre de 2025

Oficina del Procurador General:

      Hon. Omar Andino Figueroa
      Procurador General

      Lcda. Mabel Sotomayor Hernández
      Procuradora General

      Lcda. Yaizamarie Lugo Fontánez
      Procuradora General Auxiliar

Representante Legal de los querellados:

      Lcda. Daisy Calcaño López

Comisionada Especial:

      Hon. Eloína Torres Cancel

Materia: Conducta Profesional – Amonestación y apercibimiento al licenciado León Malavé por infringir la Ley Núm. 402 de 12 de mayo de 1950, y los Cánones 23, 24, 35 y 38 de Ética Profesional, y al licenciado Medina Quintana por infringir los Cánones 24 y 38 de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Juan E. Medina Quintana
    (TS-11,236)

Enrique J. León Malavé
    (TS-12,790)

CP-2020-0016

*PER CURIAM*

En San Juan, Puerto Rico, a 3 de diciembre de 2025.

Nuevamente, nos vemos obligados a ejercer nuestra facultad disciplinaria sobre miembros de la profesión legal por infringir los Cánones de Ética Profesional, 4 LPRA Ap. IX. En esta ocasión, intervenimos con el Lcdo. Enrique J. León Malavé (licenciado León Malavé) por infringir la Ley Núm. 402 de 12 de mayo de 1950, 32 LPRA sec. 3114 *et seq.*, también conocida como la *Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos* (Ley Núm. 402) y los Cánones 23, 24, 35 y 38 de Ética Profesional, *supra*, y con el Lcdo. Juan E. Medina Quintana (licenciado Medina Quintana) por infringir los Cánones 24 y 38 de Ética Profesional, *supra*.

En virtud de los fundamentos que expondremos más adelante, archivamos la *Querella* presentada en su contra, no sin antes amonestar y apercibir a los licenciados de que en el futuro deben dar fiel cumplimiento a los Cánones de Ética Profesional.

Veamos los hechos que motivan nuestra determinación.

## I.

El 5 de abril de 2013 la Sra. Rosa I. Rodríguez Mercado (señora Rodríguez Mercado) presentó sendas quejas contra los licenciados Medina Quintana y León Malavé en las que expuso las mismas alegaciones.[1] Adujo que los letrados la representaron en una demanda por despido injustificado en el pleito Rosa I. Rodríguez Mercado v. Sistema Universitario Ana G. Méndez, Caso Núm. EPE 2003-0528. Aseveró que obtuvo una sentencia favorable en el referido pleito, por lo que su antiguo patrono pagó a los licenciados los honorarios de abogado correspondientes. No obstante, la señora Rodríguez Mercado alegó que estos últimos le exigieron un pago adicional de 33.33% de todas las partidas que recibió como resultado de la sentencia.[2]

---

[1] Previo a la presentación de las quejas, la Sra. Rosa I. Rodríguez Mercado (señora Rodríguez Mercado) presentó dos demandas sobre cobro de dinero contra el Lcdo. Juan E. Medina Quintana (licenciado Medina Quintana), Caso Núm. ECD2012-1193, y el Lcdo. Enrique J. León Malavé (licenciado León Malavé), Caso Núm. ECD2013-0631. Adujo que los licenciados obtuvieron el pago ilegal de honorarios, pues se excedieron del 25% de la indemnización base concedida al empleado que dispone la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, también conocida como la *Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos*, por lo que solicitó la devolución de $127,491.50 y $57,950.50, respectivamente.

[2] En el referido pleito, la señora Rodríguez Mercado demandó al Sistema Universitario Ana G. Méndez (AGM) por despedirla injustificadamente. Inicialmente, contrató al licenciado León Malavé, pero debido a su suspensión del ejercicio de la abogacía unos días antes del juicio, contrató al licenciado Medina Quintana, quien la representó durante el juicio y el trámite apelativo.

En su contestación a la *Queja*, el licenciado Medina Quintana explicó que la señora Rodríguez Mercado contrató al licenciado León Malavé para que le representara en un pleito sobre despido injustificado y discrimen. No obstante, debido a que este Tribunal suspendió al licenciado León Malavé de la profesión,[3] el referido letrado renunció a la representación legal de la señora Rodríguez Mercado y recomendó al licenciado Medina Quintana para que lo reemplazara. Esbozó que el licenciado León Malavé y la señora Rodríguez Mercado mantuvieron una relación amistosa durante el transcurso del pleito. El licenciado Medina Quintana expuso que, a pesar de que al licenciado León Malavé se le reinstaló a la profesión legal, al momento de cobrar los honorarios del Caso Núm. EPE 2003-0528, este ya no era abogado de la señora Rodríguez Mercado. Sin embargo, aseveró que, luego de recibir el pago, la señora Rodríguez Mercado acudió al banco junto a los licenciados para cobrar los cheques correspondientes. Aseveró que, una vez allí, la señora Rodríguez Mercado expresó su agradecimiento al licenciado León Malavé y, libre y voluntariamente, le entregó un cheque por la cantidad de $127,491.50. El licenciado Medina Quintana indicó que el licenciado León Malavé compartió con él parte del dinero que le entregó la señora Rodríguez Mercado.

Finalmente, el licenciado Medina Quintana declaró que,

---

[3] Véase <u>In re León Malavé</u>, 172 DPR 1036 (2008), mediante el cual suspendimos al licenciado León Malavé del ejercicio de la abogacía por un (1) año por violar los Cánones 12, 18 y 26 de Ética Profesional, 4 LPRA Ap. IX. En particular, no compareció a una vista de aumento de pensión, ofreció representación legal deficiente y negó responsabilidad por perder la causa de acción de su cliente.

luego de varios meses, recibió una llamada de la señora Rodríguez Mercado mediante la cual esta relató que no tenía dinero debido a que: (1) lo perdió en juegos de casino; (2) compró un vehículo nuevo, y (3) regaló dinero a varios familiares. Explicó que la señora Rodríguez Mercado le preguntó si podía declarar en su planilla de contribución sobre ingresos que el dinero que le dio a los licenciados fue en pago de honorarios, a lo que él accedió. A pesar de ello, aseveró que la próxima vez que escuchó de la señora Rodríguez Mercado fue cuando lo demandó en cobro de dinero y, posteriormente, cuando presentó la queja en su contra. Sostuvo que nunca le reclamó, facturó ni requirió dinero a la señora Rodríguez Mercado.

Por otro lado, en su contestación a la queja, el licenciado León Malavé expuso que trabajó en el Caso Núm. EPE 2003-0528 durante cinco (5) años, pero que renunció a la representación legal por razón de su suspensión de la profesión. Manifestó, sin embargo, que la señora Rodríguez Mercado lo llamaba frecuentemente en busca de apoyo y para informarle acerca del caso. Indicó que mantuvo informado al licenciado Medina Quintana sobre este particular. El licenciado León Malavé expuso que la señora Rodríguez Mercado le comunicó en varias ocasiones que le haría un obsequio, ya que fue la única persona que la apoyó y que creyó en su reclamo. Explicó que, a solicitud de la señora Rodríguez Mercado, el día que el Sistema Universitario Ana G. Méndez (AGM) pagó los honorarios, él estuvo presente y la acompañó

al banco para depositar el cheque.[4] Indicó que, una vez en el banco, la señora Rodríguez Mercado le entregó una cantidad de dinero y le aseguró que era un regalo, en muestra de agradecimiento por su amistad, el apoyo y la consideración que le brindó.

El 3 de diciembre de 2014 referimos ambas quejas a la Oficina del Procurador General (OPG). La investigación ante la OPG se paralizó hasta tanto culminaran las demandas sobre cobro de dinero que la señora Rodríguez Mercado instó contra los licenciados. A finales de 2018, las partes le informaron a este Tribunal que se dictó sentencia en ambos casos conforme a un acuerdo entre las partes.

Así las cosas, continuó el proceso ante la OPG hasta que la referida dependencia emitió el *Informe del Procurador General*. En este, la OPG concluyó que los licenciados León Malavé y Medina Quintana infringieron los Cánones 23, 24 y 38 de Ética Profesional, *supra*, y la Ley Núm. 402, *supra*. Por otro lado, estimó que el licenciado León Malavé violó el Canon 35 de Ética Profesional, *supra*, pero consideró que persistía controversia sobre si el licenciado Medina Quintana lo violó. No obstante, recomendó el inicio de un proceso disciplinario contra ambos letrados.

Posteriormente, el 19 de febrero de 2020 la señora Rodríguez Mercado presentó una *Moción retirando queja o querella*, mediante la cual expresó que deseaba retirar las quejas que había presentado. Indicó que los licenciados se

---

[4] La señora Rodríguez Mercado le solicitó al licenciado León Malavé que viajara desde Estados Unidos para asistir a la reunión, ya que este último se mudó al estado de Florida luego de renunciar a su representación legal.

disculparon y le pagaron las cantidades dispuestas en el acuerdo transaccional.

No obstante, acogimos la recomendación de la OPG y ordenamos la presentación de una querella. Así, el 2 de octubre de 2020 la OPG formuló los siguientes cargos contra los licenciados:

### CARGOS CONTRA EL LICENCIADO LEÓN [MALAVÉ]

**PRIMER, SEGUNDO Y TERCER CARGO:** El licenciado León [Malavé] infringió las disposiciones de los Arts. 1 y 3 de la Ley Núm. 402, [*supra*,] y los Cánones 23 y 24 de Ética Profesional, *supra*, al solicitar, recibir y retener honorarios directamente de la señora Rodríguez [Mercado] por los servicios legales que le brindó a esta en una reclamación laboral contra su patrono.

**CUARTO CARGO:** El licenciado León [Malavé] se apartó de los preceptos del Canon 35 de Ética Profesional, *supra*, al indicar falsamente en su contestación a la queja que no había recibido cantidad alguna en concepto de honorarios de parte de la señora Rodríguez [Mercado]. Ello, a pesar de que, en una comparecencia posterior, luego de remitírsele los recibos provistos por la señora Rodríguez [Mercado], el licenciado León [Malavé]admitió que había recibido $1,500.00 de parte de esta en dicho concepto.

**QUINTO CARGO:** El licenciado León [Malavé] infringió los preceptos del Canon 38 de Ética Profesional, *supra*, al no exaltar el honor y la dignidad de la profesión, e incurrir en conducta impropia o la apariencia de esta. Ello, al aceptar y recibir la cantidad de $127,491.50 de la compensación que recibió la señora Rodríguez [Mercado] mediante Sentencia, como una retribución o gratificación por sus servicios legales y asistencia en un caso laboral.

### CARGOS CONTRA EL LICENCIADO MEDINA [QUINTANA]

**PRIMER, SEGUNDO Y TERCER CARGO:** El licenciado Medina [Quintana] infringió las disposiciones de los Arts. 1 y 3 de la Ley Núm. 402, [*supra*,] y los Cánones 23 y 24 de Ética Profesional, *supra*, al solicitar, recibir y retener honorarios directamente de la señora Rodríguez [Mercado] por los servicios legales que le brindó a esta en una reclamación laboral contra su patrono.

**CUARTO CARGO:** El licenciado Medina [Quintana] se apartó de los preceptos de sinceridad y honradez del Canon 35 de Ética Profesional, *supra*, al indicar en su contestación a la queja que no había recibido cantidad alguna en concepto de honorarios de parte de la señora Rodríguez [Mercado], cuando surge de un recibo firmado por él que recibió $1,200.00, por sus servicios legales.

**QUINTO CARGO:** El licenciado Medina [Quintana] violó el Canon 38 de Ética Profesional, *supra*, al no exaltar el honor y la dignidad de la profesión, e incurrir en conducta impropia o la apariencia de esta. Ello, al aceptar y recibir la cantidad de $57,950.50 de la compensación que recibió su clienta, la señora Rodríguez [Mercado,] mediante [una] Sentencia en un caso laboral, como una retribución o gratificación adicional a la cantidad que se le concedió en honorarios de abogado.

El 16 de enero de 2025 se celebró una vista adjudicativa en la cual testificaron la señora Rodríguez Mercado y los licenciados León Malavé y Medina Quintana. Luego de evaluar la prueba, el 22 de abril de 2025 la Lcda. Eloína Torres Cancel (Comisionada Especial) rindió su *Informe de la Comisionada Especial al Honorable Tribunal Supremo*. Concluyó que la señora Rodríguez Mercado presentó las quejas para obtener el remedio que solicitó en su demanda de cobro de dinero y llegar a una transacción judicial.

La Comisionada Especial entendió que: (1) la remuneración del 33% de la ganancia de la señora Rodríguez Mercado fue voluntaria; (2) los pagos hechos por la señora Rodríguez Mercado correspondían a los gastos en los que incurrieron los licenciados en el transcurso de su representación, y (3) los licenciados en todo momento exaltaron el honor y la dignidad de la profesión. Ante ello, recomendó la desestimación y el archivo de las quejas. Además, sugirió que este Tribunal se expresara en cuanto a que los procesos disciplinarios no se deben utilizar como un medio de presión ni negociación para lograr un beneficio personal.

## II.

A. *Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos*, Ley Núm. 402 de 12 de mayo de 1950, según enmendada

El Artículo 1 de la Ley Núm. 402, 32 LPRA sec. 3114, establece la política pública del Gobierno de Puerto Rico sobre la protección de los trabajadores y empleados contra reducciones en el valor de su trabajo:

> Serán nulos y contrarios al orden público todos los contratos, convenios o acuerdos en que trabajadores o empleados se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos bajo legislación laboral de Puerto Rico, o bajo la legislación laboral del Congreso de Estados Unidos aplicable a Puerto Rico, o al amparo de un convenio de naturaleza individual o colectivo. 32 LPRA sec. 3116.

Así, es claro que la ley prohíbe todo tipo de contrato en el que los empleados paguen honorarios de abogado a su representación legal en pleitos laborales, ya que esto equivaldría a "permitir que se reduzca el valor del trabajo del obrero". Berkan y otros v. Mead Johnson Nutrition, 204 DPR 183, 212 (2020) (citando a COPR v. SPU, 181 DPR 299, 349 (2011)).

Por tanto, le corresponde al patrono sufragar cualquier compensación que se le conceda a un empleado al amparo de la legislación laboral. In re Otero Calero, 200 DPR 561, 576 (2018). Es por esto que el Artículo 2 de la Ley Núm. 402, *supra*, dispone de manera expresa que, del empleado querellante prevalecer, el patrono querellado será el responsable de pagar los honorarios. 32 LPRA sec. 3115. En las situaciones en las que se incumpla con el Artículo 2, *supra* lo estatuido en el Artículo 4 de la misma ley obliga al abogado que haya recibido compensación por parte del empleado querellante a devolver la referida cantidad, y también una suma en concepto de daños líquidos. 32 LPRA sec. 3117; In re Rivera Rodríguez, 202 DPR 1026, 1052 (2019).

De ordinario, la cuantía máxima que puede recibir la representación legal del empleado o de la empleada litigiosa es el 25% del monto total de la compensación. López Vicil v. ITT Intermedia, Inc., 143 DPR 574, 582 (1997). Este Tribunal

entendió que esa cantidad era una suma razonable, ya que permitía que los trabajadores vindicaran sus derechos mientras se compensaba justamente a los abogados y a las abogadas que invertían su trabajo y esfuerzo para lograrlo. Íd, pag. 583. Sin embargo, de entender que la compensación del 25% es injusta, el abogado o la abogada podrá solicitar al tribunal que conceda un aumento. Íd.

### B. Canon 23 de Ética Profesional

El Canon 23 de Ética Profesional, *supra*, regula el deber que tienen los abogados y las abogadas de mantener sus bienes y los bienes de sus clientes separados. In re Rivera Rodríguez, *supra*, pág, 1050. En específico, dispone que el abogado o la abogada "debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen". Canon 23 de Ética Profesional, *supra*. Esto, a raíz de que la relación entre un cliente y su abogado o abogada debe fundarse en la honradez absoluta. In re Ramos Bahamundi, 2025 TSPR 43, pág. 11.

En aras de precisar la conducta prohibida, este Tribunal ha resuelto en varias ocasiones que un abogado o una abogada que retenga fondos pertenecientes a su cliente incurre en "una práctica altamente lesiva de la profesión legal que tiene el efecto de menoscabar la relación de honradez que debe existir entre [e]stos". Íd., pág. 21. Asimismo, un abogado o una abogada que se tarde en devolver los fondos incurre en una violación al Canon 23, *supra*, "independientemente de que haya devuelto el dinero retenido o no haya tenido la intención

de apropiárselos permanentemente". In re Santiago Maldonado, 214 DPR 1185, 1194 (2024) (citando a In re Santiago Méndez, 201 DPR 436, 444 (2018)). En consecuencia, cualquier abogado o abogada que retenga dinero que le pertenece al cliente incurre en una violación a este canon. In re Rivera Rodríguez, *supra*, pág. 1050; In re González Díaz, 201 DPR 145, 152 (2018).

Finalmente, el Canon 23 dispone que los abogados y las abogadas no deben adquirir un interés en el asunto litigioso, "excepto que puede[n] adelantar el pago de las costas del litigio, y los gastos de investigación", *supra*. Es decir, los abogados y las abogadas pueden sufragar estos gastos, pero deberán cobrarle estas partidas a los clientes como un monto separado a los honorarios.

### C. Canon 24 de Ética Profesional

El Canon 24 de Ética Profesional, *supra*, regula la fijación de honorarios. El referido Canon enumera factores que deben tomarse en consideración al momento de fijar los honorarios, a saber: (1) el tiempo requerido, la novedad y la dificultad de las cuestiones envueltas; (2) si aceptar la representación legal impediría que el abogado o la abogada se haga cargo de otros casos relacionados; (3) los honorarios que se tienden a cobrar; (4) la cuantía envuelta en el litigio; (5) la contingencia o certeza de la compensación, y (6) la naturaleza de la gestión. Íd. Este Canon recomienda que los clientes y sus representantes legales lleguen a un acuerdo al inicio de la relación profesional y que lo reduzcan a escrito, pero esto no es obligatorio. In re Pellot Cordova,

204 DPR 814, 830 (2020). También establece que "[l]os honorarios concedidos por un tribunal son para beneficio del cliente y [el abogado o la abogada no debe] reclamarlos para sí o renunciarlos sin autorización expresa del cliente". Canon 24 de Ética Profesional, *supra*. Por último, el Canon 24 exige que los abogados y las abogadas se rijan por las limitaciones estatutarias que existen respecto a la fijación de honorarios profesionales. In re Pellot, *supra,* pag. 831.

Recuérdese que la Ley Núm. 402, *supra*, constituye una limitación estatutaria a la fijación de honorarios. Según mencionado anteriormente, este estatuto prohíbe que los abogados y las abogadas pacten honorarios con empleados y empleadas que instan un proceso contra su patrono al amparo de leyes estatales o federales. In re Otero Calero, *supra*, pág. 577. De violar esta disposición, deberán restituir el dinero y pagar una suma adicional en concepto de daños. In re Rivera Rodríguez, *supra*, pág. 1052. A su vez, al interpretar el referido estatuto, este Tribunal pautó que los honorarios que se podrán recibir en reclamaciones laborales se calcularán hasta un máximo de 25% del monto total otorgado a la parte victoriosa. López Vicil v. ITT Intermedia, Inc., *supra*, pág. 583.

### D. Canon 35 de Ética Profesional

El Canon 35 de Ética Profesional, *supra*, establece el deber ético de ser sincero y honrado, lo que se consideran los pilares fundamentales de la profesión legal. In re Radinson Caraballo, 2025 TSPR 71, 2016 DPR __; In re Santiago Rojas, 2025 TSPR 30, 215 DPR __ (2025); In re Ortiz Sánchez,

201 DPR 765, 781 (2019). En reiteradas ocasiones hemos sancionado a profesionales del derecho por proveer información falsa u ocultar información que debe ser revelada a los tribunales, en violación a lo dispuesto en este canon. In re Ayala Oquendo, 2025 TSPR 9, 2015 DPR __; In re Jusino Torres, 210 DPR 919, 933 (2022); In re Valentín Custodio, 187 DPR 529, 547 (2012). "[E]ste canon se incumple por el simple hecho de un abogado o una abogada faltar a la verdad, independientemente de las razones habidas para ello". In re Ayala Oquendo, supra; In re Ramos Bahamundi, supra. Se infringe el referido Canon cuando se tergiversa la verdad en aras de inducir a error al juzgador. Canon 35 de Ética Profesional, supra. Esto, pues "[l]a profesión jurídica está predicada en la búsqueda y [la] defensa de la verdad". In re Sierra Arce, 192 DPR 140, 147 (2014). Permitir que la conducta de un abogado o de una abogada se desvíe de la sinceridad y honradez es inherentemente contrario al propósito de la profesión. Íd.

### E. Canon 38 de Ética Profesional

El Canon 38 de Ética Profesional, supra, establece los valores fundamentales con los cuales un abogado o una abogada debe cumplir al ejercer la profesión de la abogacía, a saber, la dignidad y el honor. In re Radinson Caraballo, supra. Así, el mencionado canon busca **evitar la apariencia de conducta profesional impropia.** In re Sanfeliú Vera, 2025 TSPR 53, 215 DPR __ (2025); In re Radinson Caraballo, supra. Esto, pues la apariencia de conducta profesional impropia "tiene un efecto dañino sobre la imagen, la confianza y el respeto de la

ciudadanía hacia la profesión". <u>In re Toro Iturrino</u>, 190 DPR 582, 591 (2014).

Un abogado o una abogada no viola el Canon 38, *supra*, por meramente infringir otros cánones del Código de Ética Profesional. El estándar establecido para el Canon 38, *supra*, evalúa "si [la] conducta [del letrado o de la letrada] demuestra que realmente no exaltó, al máximo de su capacidad, el honor y la dignidad de la profesión legal o si transgredió de otra forma los deberes contenidos en ese canon". <u>In re Villalba Ojeda</u>, 193 DPR 966, 976 (2015). Por esto, "[c]ada abogado [o abogada] debe ser consciente de que es un espejo en el cual se refleja la imagen de la profesión legal", ya que los abogados y las abogadas son "la imagen misma de todo el andamiaje judicial y del valor de la justicia". <u>In re Radinson Caraballo</u>, *supra.* Por la naturaleza de la profesión, los abogados y las abogadas tienen la obligación de propiciar la imagen de respeto y confianza que la sociedad les deposita. <u>Íd</u>.

### F. Actos simulados

"Lo simulado, sinónimo de falso y fingido, en esencia es contrario a la verdad; virtud que constituye el ideal más alto al cual debemos aspirar en nuestra comunidad que se rige al amparo del imperio de la ley". <u>In re Vélez</u>, 103 DPR 590, 598 (1975).

> [M]uchas veces de buena fe, por una mal entendida bondad hacia familiares y amigos, por el deseo de poner a salvo intereses de personas débiles o por otros motivos más o menos explicables dentro de un campo de acción compatible en cierto modo con la honradez y la verdad última, se realizan actos simulados que no debe permitirse que tengan luego consecuencias tales que resulten opresivas. <u>Puig v. Sotomayor</u>, 55 DPR 250, 260-261 (1939).

No hay duda que la intervención de un abogado o notario en cualquier negocio jurídico simulado es razón suficiente para sancionarlo disciplinariamente. In re Rodríguez Gerena, 194 DPR 917, 923-924 (2016). Ante actos simulados, hemos enfatizado que la misión del abogado no le permite ponerse al amparo de cualquier linaje o fraude. In re Vélez, *supra.* En fin, la participación de un abogado o de los abogados en actos simulados es conflictiva con los mejores postulados de conducta que deben regir a los miembros de nuestra profesión legal. Íd.

### III.

El proceso disciplinario contra los licenciados comenzó a causa de unas quejas que presentó, y luego retiró, la señora Rodríguez Mercado. No obstante, en el ejercicio de nuestra facultad disciplinaria sobre los miembros de la profesión, entendimos meritorio referir el asunto para que se investigaran los hechos que la señora Rodríguez Mercado trajo a nuestra atención.

Luego de su investigación, la OPG concluyó que existía prueba clara, robusta y convincente de que los licenciados León Malavé y Medina Quintana violaron los Artículos 1 y 3 de la Ley Núm. 402, *supra*, y los Cánones 23, 24 y 38 de Ética Profesional, *supra*. Además, concluyó que existía prueba clara, robusta y convincente de que el licenciado León Malavé infringió el Canon 35 de Ética Profesional, *supra*, y de que el licenciado Medina Quintana posiblemente lo violó. Esto, debido a que: (1) solicitaron, recibieron y retuvieron honorarios legales de la señora Rodríguez Mercado por

representarla en una reclamación laboral, e (2) indicaron que no habían recibido honorarios legales por parte de la señora Rodríguez Mercado, aunque posteriormente admitieron que aceptaron el pago.

Por otro lado, la Comisionada Especial llevó a cabo una investigación y concluyó que no había prueba clara, robusta y convincente de que los licenciados violaron la Ley Núm. 402, *supra*, o el Código de Ética Profesional, *supra*. Determinó que la suma de dinero que pagó la señora Rodríguez Mercado a los licenciados fue voluntaria y, dado que la cantidad que le requirieron los licenciados fue en concepto de gastos, recomendó la desestimación y el archivo de la *Querella* de epígrafe. Aunque concedemos deferencia a las determinaciones de hecho de la Comisionada Especial, adelantamos que diferimos en cuanto a su interpretación. Explicado el trasfondo procesal, procedemos a resolver.

### A. Lcdo. Enrique J. León Malavé

La señora Rodríguez Mercado informó mediante su testimonio en la vista adjudicativa que conoció al licenciado León Malavé en 2003 durante su periodo de suspensión de empleo en AGM. Explicó que hablaron sobre la posibilidad de que el letrado la representara en la eventualidad de que la AGM procediera con su despido.[5] Luego de que la AGM la despidió, se reunieron nuevamente y hablaron más a fondo sobre su situación laboral. Según informó la señora Rodríguez Mercado, en esta reunión contrató formalmente al letrado.[6] A raíz de

---

[5] *Informe de la Comisionada Especial al Honorable Tribunal Supremo*, pág. 10.
[6] *Íd*.

esto, indicó que el licenciado León Malavé solicitó un *retainer fee* de $1,500 y esta se comprometió a pagar la cantidad a plazos.[7] Así, surge del expediente que la señora Rodríguez Mercado pagó la cantidad solicitada mediante dos cheques emitidos el 2 de mayo de 2003, por la cantidad de $700, y el 19 de julio de 2003, por la cantidad de $800.[8]

Por su parte, el licenciado León Malavé informó en su testimonio que solicitó el pago de $1,500 en concepto de honorarios para realizar una investigación previo a instar la reclamación.[9] Sostuvo que, en el contrato de servicios entre la señora Rodríguez Mercado y él, la señora Rodríguez Mercado se comprometió a pagar el 25% de honorarios contingentes a la reclamación.[10] Es decir, estableció una distinción entre los honorarios que cobró por el trabajo que hizo previo a la presentación de la demanda y aquellos que recibiría al final del proceso judicial, de resultar exitoso. No le asiste la razón.

La relación cliente-abogado en este caso se formalizó a partir de la segunda reunión luego del despido, pues aquí fue que el licenciado León Malavé accedió ser el representante legal de la señora Rodríguez Mercado y requirió el pago en adelantado por su labor.[11] Por lo tanto, la investigación previa a presentar la demanda es parte de los honorarios que el patrono tenía el deber de pagar y el licenciado León Malavé tenía el deber de incluirlo en el desglose de horas invertidas

---

[7] Íd.
[8] Apéndice del *Informe del Procurador General*, pág. 7.
[9] Íd., pág. 20.
[10] Íd.
[11] Véase In re Mondríguez Rivera, 205 DPR 824, 832 (2020).

en la representación de la señora Rodríguez Mercado. No procede una distinción en cuanto al momento en el que se pagaron los honorarios de abogado, ya sea antes o después de la presentación de la demanda, para justificar que el licenciado León Malavé aceptara honorarios de la señora Rodríguez Mercado en un caso laboral. A partir de lo anterior, es forzoso concluir que el pago de $1,500 fue en concepto de honorarios de abogado y no meramente por una consulta inicial.

Sin embargo, como vimos anteriormente, existen limitaciones estatutarias al cobro de honorarios en casos laborales. Por un lado, la Ley Núm. 402 prohíbe que "los trabajadores o empleados se obliguen directa o indirectamente a pagar honorarios a sus abogados [o abogadas] en casos de reclamaciones judiciales o extrajudiciales contra sus patronos". 31 LPRA sec. 3116. Por otro lado, el Canon 24 de Ética Profesional, *supra*, obliga a los abogados y a las abogadas a que "sigan las normas establecidas para la fijación de honorarios". In re Rivera Rodríguez, *supra*, pág. 1051. Además, surge del expediente que el licenciado León Malavé recibió un cheque por $127,491.50 de parte de la señora Rodríguez Mercado, y en concepto de regalo, tras emitirse la sentencia a su favor. Este dinero formaba parte del monto de $189,000, calculado por la propia señora Rodríguez Mercado. Huelga apuntalar que la cantidad de $127,491.50 constituye, exactamente, el 33% del monto entregado a la señora Rodríguez Mercado por AGM. Si bien es cierto que, a raíz de la transacción del pleito de cobro de dinero incoado por la señora Rodríguez Mercado, el licenciado León Malavé devolvió

$30,000 de esta cantidad, aún obtuvo una ganancia neta de $97,491.50.

Así, determinamos que el licenciado León Malavé violó los Artículos 1 y 3 de la Ley Núm. 402, *supra*, y el Canon 24 de Ética Profesional, *supra*, al solicitar, recibir y retener $1,500 en honorarios para llevar a cabo una investigación previo a la presentación de la reclamación que le encomendó la señora Rodríguez Mercado, así como recibir $127,491.50 en honorarios simulados.

Asimismo, en su testimonio, el licenciado León Malavé admitió que recibió los $1,500 de la señora Rodríguez Mercado y que, incluso, le entregó un recibo por cada cheque que esta última le entregó.[12] Recuérdese que el Canon 23 de Ética Profesional, *supra*, dispone que el abogado o la abogada "debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen". Como hemos resuelto en reiteradas ocasiones, al retener dinero que pertenece a su cliente, se infringe el Canon 23, *supra*. In re Rivera Rodríguez, *supra*, pág. 1050. Por ello, tras determinar que el pago que hizo la señora Rodríguez Mercado fue en concepto de honorarios indebidos, es forzoso concluir que el licenciado León Malavé infringió el Canon 23, *supra*, pues este retuvo dinero que le pertenecía a su cliente.

Establecido lo anterior, debemos determinar si el licenciado León Malavé infringió el Canon 35 de Ética Profesional, *supra*, al indicar en su contestación a la queja

---

[12] Íd. Véase, Vista adjudicativa de 16 de enero de 2025, Exhibit 1.

que no había recibido honorarios, a pesar de que luego admitió a esto. El licenciado León Malavé aseveró que "de ninguna manera [] cobr[ó] honorarios de abogado, ni tan siquiera hi[zo] una factura de servicios, ni se [l]e pagó por los servicios ofrecidos".[13] De manera contraria, en una contestación al requerimiento de admisión de la OPG, el letrado admitió que recibió un total de $1,500 en concepto de honorarios para llevar a cabo la investigación antes de presentar la demanda por despido injustificado.[14] Evaluado el expediente, la contradicción es clara, por lo cual razonamos que el licenciado León Malavé faltó a su deber de sinceridad y violó el Canon 35 de Ética Profesional, *supra*, al negar y, posteriormente, aceptar que recibió dinero en concepto de honorarios de la señora Rodríguez Mercado. Íd.

Finalmente, corresponde determinar si el licenciado León Malavé infringió el Canon 38 de Ética Profesional, *supra*, al recibir $127,491.50 de la señora Rodríguez Mercado en concepto de regalo de agradecimiento. Del testimonio de la señora Rodríguez Mercado surge que esta invitó al licenciado León Malavé a Puerto Rico "a cobrar",[15] ya que este vivía en el estado de Florida al momento en el que AGM realizó el pago impuesto mediante la sentencia dictada en el caso de despido injustificado el 16 de diciembre de 2010.[16] La señora Rodríguez Mercado declaró que calculó la cantidad que le

---

[13] Carta del 1 de julio de 2014, pág. 3.
[14] *Informe del Procurador General*, pág. 4. Véase, además, *Informe del Procurador General*, Anejo XIII, pág. 2
[15] *Informe de la Comisionada Especial al Honorable Tribunal Supremo*, pág. 30.
[16] Íd., pág. 12.

entregó a los licenciados basándose en la cantidad que le pagó AGM. Informó que el licenciado León Malavé indicó que el cálculo estaba incorrecto, pues faltaba incluir aproximadamente $2,000.[17] La señora Rodríguez Mercado también testificó que el letrado le aconsejó que guardara para su retiro el dinero que ofreció,[18] pero que aun así aceptó y depositó el cheque.

Por su parte, el licenciado Medina Quintana testificó que la señora Rodríguez Mercado manifestó, en varias ocasiones, que el licenciado León Malavé merecía parte del pago de los honorarios que le haría AGM, por lo que le iba a dar un gran regalo.[19]

Los licenciados testificaron que, previo a que se presentaran las demandas sobre cobro de dinero, hablaron con la señora Rodríguez Mercado porque esta albergaba inquietudes sobre las contribuciones que tendría que pagar en cuanto al dinero que obtuvo de la sentencia.[20] El tracto procesal demuestra que: (1) AGM le pagó a la señora Rodríguez Mercado el 16 de diciembre de 2010; (2) esta le pagó a los licenciados las sumas adicionales ese mismo día, y (3) no fue hasta el 25 de septiembre de 2012 y el 16 de mayo de 2013 que la señora Rodríguez Mercado presentó las demandas por cobro de dinero contra los licenciados.[21] De la prueba que obra en el expediente, se desprende que la señora Rodríguez Mercado pagó los honorarios de manera libre y voluntaria, pues no fue hasta

---

[17] Íd., pág. 13.
[18] Íd.
[19] Íd., págs. 16-17.
[20] Íd., págs. 19, 22.
[21] Íd., pág. 5.

que se percató de las consecuencias contributivas del pago de AGM que solicitó la devolución del dinero. Aunque nada impide que un cliente le haga un regalo de agradecimiento a su representante legal, el Canon 38 de Ética Profesional, *supra*, prohíbe la **apariencia** de conducta impropia.

En este contexto, debemos recordar que la Ley Núm. 402 expresamente prohíbe cualquier pacto de honorarios adicionales y el licenciado León Malavé aceptó una cantidad de dinero significativa como un regalo de una clienta a quién representó en un pleito laboral. Asimismo, el Canon 24 de Ética Profesional, *supra*, exige que los abogados y las abogadas se rijan por la legislación vigente en materia de cobro de honorarios. Según surge de los hechos que la Comisionada Especial encontró incontrovertidos, esta cantidad de dinero adicional se calculó utilizando como base la cantidad que AGM le pagó a la señora Rodríguez Mercado. A todas luces, esto debe entenderse como honorarios simulados. No debe usarse el pretexto del agradecimiento real de un cliente como subterfugio a los parámetros que guían el cobro de honorarios y salvaguardan la dignidad de la profesión. Debido a las circunstancias esbozadas, concluimos que el licenciado León Malavé aceptó indebidamente una cantidad de dinero irrazonable como compensación por sus servicios legales bajo el pretexto de que constituía un regalo, incurriendo en una violación al Canon 24 de Ética Profesional, *supra*. Con este proceder, además, transgredió el honor y la dignidad que permea la profesión legal al aceptar el dinero

adicional, lo cual constituye una violación al Canon 38 de Ética Profesional, *supra*.

Por todo lo anterior, amonestamos y apercibimos al licenciado León Malavé de que en el futuro dé fiel cumplimiento a la Ley Núm. 402 y a los Cánones 23, 24, 35 y 38 de Ética Profesional, *supra*.[22] Asimismo, conforme a lo estatuido en los Artículos 2 y 4 de la Ley Núm. 402, *supra*, ordenamos la devolución de los $1,500 que pagó la señora Rodríguez Mercado e imponemos la indemnización de una suma adicional de $1,500 en concepto de daños líquidos. 32 LPRA sec. 3116. Ordenamos además anular cualquier transacción restante sobre los honorarios simulados, entiéndase, los restantes $97,491.50 que retuvo el licenciado como beneficio tras la transacción del pleito en el foro primario.

### B. Lcdo. Juan E. Medina Quintana

A diferencia del licenciado León Malavé, el licenciado Medina Quintana asumió la representación legal de la señora Rodríguez Mercado varios años luego del comienzo del trámite judicial. La señora Rodríguez Mercado informó en su testimonio que contrató al letrado cuatro (4) días antes de que se celebrara el juicio.[23] Por su parte, el licenciado Medina Quintana confirmó que, debido a la fecha de su contratación, este se dedicó mayormente al proceso apelativo. Explicó que, para recurrir en apelación, entendió necesario

---

[22] Es menester señalar que esta es la segunda vez que disciplinamos al licenciado León Malavé. En 2008 este Tribunal lo suspendió del ejercicio de la abogacía por el término de un (1) año luego de que infringiera los Cánones 12, 18 y 26 de Ética Profesional, *supra*. Además, tomamos en consideración la estipulación a la que llegó el licenciado León Malavé en la demanda sobre cobro de dinero y su devolución de $30,000 a la señora Rodríguez Mercado. Íd., pág. 20.

[23] Íd., pág. 15.

solicitar una transcripción del juicio que costó $1,897.35.[24] Aunque solicitó el pago de esa suma a la señora Rodríguez Mercado, el licenciado Medina Quintana declaró que esta no lo podía pagar, por lo que él asumió el gasto y, posteriormente, ella le reembolsó $1,200.[25] El licenciado manifestó que, aunque el recibo dispone que es por "servicios profesionales", en realidad fue un reembolso por un pago que asumió debido a la indigencia de su clienta.[26] El Canon 23, *supra*, prohíbe que los abogados y las abogadas "promet[an] ayuda financiera" a sus clientes, a no ser que "adelant[en] el pago de las costas del litigio". En este caso, el licenciado Medina Quintana, en aras de defender a su clienta adecuadamente, sufragó los gastos necesarios para poder presentar su escrito ante el Tribunal de Apelaciones, mas no prometió ayuda financiera a su clienta. Así, entendemos que el licenciado Medina Quintana cumplió con el Canon 23, *supra*.

No obstante, del expediente surge que el 16 de diciembre de 2010 el licenciado Medina Quintana acompañó a la señora Rodríguez Mercado a su reunión con AGM y que, como parte de la sentencia, AGM entregó un cheque a la señora Rodríguez Mercado por el monto total de la sentencia y otro al letrado por el monto total de los honorarios de abogado. A pesar de esto, al acudir al banco para depositar el cheque que emitió AGM, la señora Rodríguez Mercado giró un cheque a favor del

---

[24] Íd., pág. 16. El licenciado Medina Quintana también asumió el gasto de $275.74 en copias y de $10 por el envío por correo de la transcripción de las vistas. Así, el total que el licenciado pagó en gastos sumó a $1,485.74. No obstante, la señora Rodríguez Mercado no podía devolverle la cantidad completa, por lo que le devolvió solo $1,200.
[25] Íd.
[26] Íd.

licenciado Medina Quintana por la cantidad de $57,950.50.[27]

Reiteramos que no está prohibido que un cliente entregue una cuantía de dinero a su representante legal a modo de regalo. Sin embargo, los jueces y las juezas no debemos ser tan inocentes como para creer aseveraciones que nadie más creería. Pueblo v. Luciano Arroyo, 83 DPR 563, 582 (1961). Si bien es cierto que un abogado o unos abogados puede recibir regalos de un cliente, este regalo debe ser justo y razonable dentro de las circunstancias. En el contexto de un pleito laboral sujeto a honorarios contingentes, encontramos que la aceptación del regalo que le entregó la señora Rodríguez Mercado al licenciado Medina Quintana, en adición a los honorarios que le entregó AGM, constituye una infracción al Canon 24, *supra*, pues consideramos este regalo un honorario simulado, dada la equivalencia exacta entre el monto entregado y el monto que hubiera correspondido a un honorario (33% de la indemnización obtenida en el pleito). Además, encontramos que tal aceptación configura una violación al Canon 38, *supra,* pues aparenta ser conducta impropia. Por lo anterior, apercibimos al licenciado Medina Quintana de que en el futuro de fiel cumplimiento a los Cánones 24 y 38 de Ética Profesional, *supra*.[28]

---

[27] Íd., pág. 19.

[28] Tomamos en consideración que en marzo del 2017 apercibimos al licenciado Medina Quintana de que debía desempeñarse con mayor cuidado al ejercer la profesión de la abogacía y de la notaría, pues no fue diligente al informar a las partes con interés sobre instrumentos públicos que otorgó y por no atender señalamientos del Registro de la Propiedad oportunamente. También consideramos que el licenciado Medina Quintana ejerce la profesión de la abogacía hace más de treinta años y estos han sido sus únicos procesos disciplinarios. Por último, tomamos en consideración la estipulación a la que llegó el licenciado Medina Quintana en la demanda sobre cobro de dinero y su devolución de $61,125.50 a la señora Rodríguez Mercado. Véase *Informe de la Comisionada Especial al Honorable Tribunal Supremo*, pág. 20.

**IV.**

Por los fundamentos expuestos, amonestamos y apercibimos al licenciado León Malavé de que en el futuro dé fiel cumplimiento a la Ley Núm. 402 y a los Cánones 23, 24, 35 y 38 de Ética Profesional, *supra*. Ordenamos, además, el pago de $3,000; esto es, la devolución de los $1,500 que pagó la señora Rodríguez Mercado en honorarios y el pago de $1,500 en concepto de daños, conforme lo establece la Ley Núm. 402. Asimismo, ordenamos la anulación de cualquier pago de honorarios simulados, por lo que procede devolver a la señora Rodríguez Mercado el balance pendiente de $97,491.50. Por último, apercibimos al licenciado Medina Quintana de que en el futuro dé fiel cumplimiento a los Cánones 24 y 38 de Ética Profesional, *supra*. Atendido el asunto, ordenamos el archivo de la *Querella* de epígrafe.

Notifíquese a los licenciados León Malavé y Medina Quintana de esta Opinión *Per Curiam* y de la *Sentencia* por medio del correo electrónico registrado en el Registro Único de Abogados.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Juan E. Medina Quintana
      (TS-11,236)

Enrique J. León Malavé
      (TS-12,790)

CP-2020-0016

SENTENCIA

En San Juan, Puerto Rico, a 3 de diciembre de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, amonestamos y apercibimos al Lcdo. Enrique J. León Malavé de que en el futuro dé fiel cumplimiento a la Ley Núm. 402 y a los Cánones 23, 24, 35 y 38 de Ética Profesional, *supra*. Ordenamos, además, el pago de $3,000; esto es, la devolución de los $1,500 que pagó la Sra. Rosa I. Rodríguez Mercado en honorarios y el pago de $1,500 en concepto de daños, conforme lo establece la Ley Núm. 402. Asimismo, ordenamos la anulación de cualquier pago de honorarios simulados, por lo que procede devolver a la señora Rodríguez Mercado el balance pendiente de $97,491.50. Por último, apercibimos al Lcdo. Juan E. Medina Quintana de que en el futuro dé fiel cumplimiento a los Cánones 24 y 38 de Ética Profesional, *supra*. Atendido el asunto, ordenamos el archivo de la *Querella* de epígrafe.

Notifíquese a los licenciados León Malavé y Medina Quintana de esta Opinión *Per Curiam* y de la *Sentencia* por medio del correo electrónico registrado en el Registro Único de Abogados.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez concurre sin opinión escrita. El Juez Asociado señor Candelario López no interviene.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo